LINCOLN NATIONAL BANK AND TRUST COMPANY OF FORT WAYNE *v.*
PEOPLES TRUST BANK AND PHILIP H. WYSS, CO-ADMINISTRATOR OF THE
ESTATE OF WILLIAM S. WYSS, DECEASED

[No. 3-877A216. Filed August 21, 1978.]

*William F. McNagny, Wayne L. Witmer, Barrett, Barrett & McNagny,* of Fort Wayne, for appellant.

*Robert J. Parrish, Daniel K. Leininger, Parrish, Eggers, Larson & Burt,* of Fort Wayne; *John R. Kowalczyk, Newkirk, Keane, Kowalczyk & Leal,* of Fort Wayne, for appellees.

STATON, J.— The action below was brought by the co-administrators of the Estate of William S. Wyss, deceased. The Estate recovered a sum of money which Lincoln National Bank and Trust Company of Fort

Wayne had set off against a certificate of deposit which Wyss held in the Bank. We reverse in part.

This case raises the question of whether the Bank properly cashed checks which created overdrafts on a depositor's account, thereby entitling the Bank to set off such amounts against other deposits held by the depositor in the Bank.

Wyss had a checking account at Lincoln National Bank and also owned a $50,000 certificate of deposit at the Bank, payable on February 18, 1974. Apparently, during the latter years of his life, Wyss' mind was somewhat unstable. Near the end of his life, he wrote three checks for which his account's funds were insufficient. The first, drawn on his Lincoln account and dated December 3, 1973 (#2223), was in the amount of $8,981.83. It was delivered by Wyss to Harold F. Allen and was payable to Rudisill Motors.[1] A second check, drawn on the Lincoln account and dated December 10, 1973 (#2397), was in the amount of $300. In the record it bears the legend, "account closed." The third check, drawn on Indiana Bank and undated (#1015), was in the amount of $300. It was presented to Lincoln and was honored by cashing.

The main controversy involves the sequence of events culminating in the cashing of check #2223 for $8,981.83. On December 3, 1973, Harold F. Allen attempted to cash check #2223 at a Lincoln branch office. The Bank refused to cash the check, for a reason not evident in the record. Later the same day, after banking hours, Allen presented the check to a BankAmericard teller at Lincoln's main office. He endorsed the check with his name, followed by "Rudisill Motors." The teller accepted the check, credited part of the amount to Allen's BankAmericard account, and issued the remainder in the form of a cashier's check made out to Allen. The teller failed to abide by an internal bank rule, which required a manager's approval before a teller cashed or certified a check for over $500. Allen cashed the cashier's check at a savings and loan association the same day. Lincoln subsequently attempted to stop payment on the check, but later made payment.

---

1.   In its brief, Lincoln claims Allen was the principal officer and owner of Rudisill Motors, but the evidence in the record provides no clue to Allen's status.

The record shows that two "holds" (in other words, no check would be paid without the express authority of the Bank's officers), dated December 5 and December 6, 1973, were entered on Wyss' checking account at the request of someone other than Wyss himself.

Wyss died on January 29, 1974. Lincoln effected a set off in the amount of $9,581.83 (the sum of the three checks) against Wyss' certificate of deposit. His estate sought to recover that amount.

Trial was brief. The evidence presented concerned the circumstances of the cashing of check #2223 and the Bank's knowledge of Wyss' mental instability. The attorney for the Bank indicated his belief that the complaint involved a question of law rather than of fact. Nonetheless, the trial court issued findings of fact and conclusions of law. The findings relevant to this appeal are as follows:

"4. That prior to the presentment of check #2223 for payment at Lincoln an officer of said Bank was notified not to honor any checks of Wyss because Wyss was not mentally sound.

\* \* \*

" 7. That said teller, who was not an officer of the Bank, contrary to the internal rules of the Bank deducted the balance due Bank Americard and issued a Lincoln Cashier's Check for $8,354.08 to the individual, not the named payee of check #2223.

" 8. That no officer of Lincoln ever rescinded the original dishonoring of check #2223 nor authorized the teller's transaction.

" 9. That check #2223 was not properly payable from the account of Wyss nor did Lincoln make a good faith payment of said check.

"10. That Lincoln had received and had on file on 12/5/73 and 12/6/73 directions from an officer of Lincoln not to pay any checks on the account of Wyss without the express authority of officers Anderson or Koehlinger."

The trial court concluded that the law was with the Estate and granted the Estate judgment against Lincoln in the amount of $9,581.83 plus interest in the amount of $1,725.00.

Lincoln failed to take issue with the trial court's findings numbers eleven through fourteen, which involved the propriety of the Bank's handling of checks #2397 and #1015, each drawn for $300. In addition, Lincoln failed to address any argument against the Estate's recovery

of the amount of these two checks, totaling $600. Therefore, Lincoln has waived any issue it may have raised concerning that portion of the trial court's judgment. Ind. Rules of Appellate Procedure, AP. 8.3(A). We affirm the Estate's recovery of $600.00 plus interest.

The only issue we must resolve, then, is whether Lincoln properly cashed check #2223 and became entitled to set off $8,981.83 against Wyss' certificate of deposit.

Under the Uniform Commercial Code, Lincoln was authorized to cash check #2223, even though the account's funds were insufficient, so long as the check was properly payable.

"When bank may charge customer's account — (1) As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft." IC 1971, 26-1-4-401, Ind.Ann.Stat. § 19-4-401 (Burns Code Ed.).

Check #2223 was properly payable on its face. The check was completed and signed by the depositor and was not altered in any way. Thus, unless the check was not "properly payable" for some other reason, the trial court erred in finding (finding of fact #9) that the check was not properly payable.

The Estate argues that check #2223 was not properly payable for several reasons:   it was cashed without sufficient funds to cover it; it was cashed without a manager's approval; it had been dishonored previously; and no evidence was presented establishing the relationship between Allen and Rudisill Motors.

The Estate's objections fail to establish that the check was not properly payable. IC 1971, 26-1-4-401, *supra*, clearly authorizes a bank to cash a check which creates an overdraft. The requirement of a manager's approval before cashing certain checks is an internal banking rule, the violation of which in this instance cannot be invoked for the benefit of the Estate. The Estate offers no Indiana authority suggesting that an internal banking rule may be relied upon by a customer bringing an action at law.[2] The evidence itself fails

---

2.   In *Continental Bank v. Fitting* (1977), 114 Ariz. 98, 559 P.2d 218, a customer relied upon evidence showing that, under its usual internal procedures, the bank would have known of an overdraft and would not have paid a certain check. On appeal, the court

to establish that the teller's violation of the internal banking rule was the direct cause of harm to the Estate; even if the teller had adhered to the rule, a manager still had the option of approving the transaction which created on overdraft's on Wyss' account, under IC 1971, 26-1-4-401, *supra*. Likewise, a previous dishonor of check #2223, whatever the reason, did not affect Lincoln's right to decide to pay the check upon a later presentment, again under IC 1971, 26-1-4-401, *supra*. Further, as Lincoln points out, the Estate in no way relied on the earlier dishonor to its detriment. Finally, the relationship (or lack of it) between Allen and Rudisill Motors is not at issue in this case. The Estate presented no evidence at trial tending to establish that someone other than the proper payee had received the proceeds from check #2223. Both parties seemed to presume, as we will, that Allen was acting in a representative capacity in cashing a check made out to Rudisill Motors.

We hold that check #2223 was properly payable as a matter of law.

In its brief, the Estate claimed that the trial court's judgment for the Estate could be sustained on an alternative ground, that is, that Lincoln failed to exercise reasonable care in cashing check #2223. The grounds for charging negligence include those which we have already discounted. However, the Estate also argues that Lincoln, which was "monitoring" Wyss' account, was negligent in cashing a check when its officers knew of Wyss' mental instability.

The trial court's finding of fact #4, that the Bank had been notified not to honor Wyss' checks before check #2223 was presented on December 3, 1973, would appear to support such an argument. However, the finding is not supported by any evidence in the record. While Bank officers had been requested to "monitor" Wyss' account before presentment of check #2223, the record shows that an actual "hold" was not placed on Wyss' account until December 5, 1973. A bank's duty to "monitor" an account cannot give rise to an action for negligence when a teller cashes a properly payable check.

granted the bank recovery; it held that, in cashing the check creating an overdraft, the bank was acting in accordance with procedures specifically authorized by law. The court declined to adopt the theory that a bank's own internal policies may by themselves give rise to a duty to follow such policies in every case, despite contrary statutory provisions.

Finally, it is not at all clear under what authority the bank would have stopped payment of checks drawn on Wyss' account. IC 1971, 26-1-4-403, Ind.Ann.Stat. § 19-4-403 (Burns Code Ed.) concerns the manner in which the "customer" may order a bank to stop payment on checks. In the case at hand, Wyss never requested that a "hold" be placed on his account. He continued to write checks drawn on his account. The "hold" was ordered by his attorney, who claimed that Wyss was mentally incompetent. However, under IC 1971, 26-1-4-405, Ind.Ann.Stat. § 19-4-405 (Burns Code Ed.),

> "Neither death nor incompetence of a customer revokes such authority to accept, pay, collect or account until the bank knows of the fact of death or of an adjudication of incompetence and has reasonable opportunity to act on it."

The record contains no evidence that Wyss was ever adjudicated to be incompetent. Lincoln could not be held negligent in cashing a properly payable check authorized by Wyss, simply because Wyss' attorney communciated to the Bank that Wyss was mentally unsound and in need of having his account monitored.

When Lincoln cashed check #2223, an overdraft on Wyss' account resulted. Wyss became indebted to Lincoln for the amount of the check. Lincoln had the right to charge the amount to Wyss' other deposits in the Bank. *American Fletcher National Bank and Trust Company v. Flick* (1969), 146 Ind.App. 122, 252 N.E.2d 839; *Teeters v. City Nat. Bank of Auburn* (1938), 214 Ind. 498, 14 N.E.2d 1004. Therefore, Lincoln had the right to set off the amount of $8,981.83 against the $50,000 certificate of deposit Wyss owned in the Bank.

With regard to check #2223, the trial court erred in concluding that the law was with the Estate and in granting the Estate judgment in the amount of $8,981.83. We reverse the award of $8,981.83 plus interest and remand to the trial court with instructions to enter judgment for Lincoln. We affirm the portion of the judgment granting the Estate recovery of $600.00 plus interest.

Hoffman, J., concurs;

Robertson, J. (by designation), concurs.

NOTE — Reported at 379 N.E.2d 527.