COPE, Judge.
Republic National Bank of Miami appeals an adverse final judgment after a bench trial. We reverse.
Appellee Maria Johnson was a depositor at Republic National Bank. In March, 1989 she opened a checking account with a balance of $59,000. In May through July, 1989 Ms. Johnson made a series of cash withdrawals from her account at the bank. *1016 These withdrawals eventually depleted the balance in the account.[1]
Unbeknownst to the bank, during this time period Ms. Johnson’s landlord had been attempting to have the Department of Health and Rehabilitative Services take action to determine Ms. Johnson’s competency. However, no action was accomplished until after the withdrawals in question. On September 28, 1989 the probate division of the circuit court entered an order adjudging Ms. Johnson incompetent by reason of organic mental syndrome. At that time Ms. Johnson was 76 years old.
The Guardianship Program of Dade County, Inc., investigated the cash withdrawals that Ms. Johnson had made. The guardian was unable to locate any of the money or to ascertain what happened to it. There are some signs that Ms. Johnson was the victim of exploitation, but no facts have emerged which would yield either the money or an explanation.
The guardian brought suit against Republic National Bank. The guardian contended that there were “red flags” in this case which should have alerted the bank that Ms. Johnson was not competent, or that Ms. Johnson was being exploited. After a bench trial in the probate division, the court ruled that the bank should have made some inquiry regarding the final two withdrawals, for $15,000 and $26,949, respectively. The court entered judgment for the guardian in those amounts, plus prejudgment interest. The bank has appealed.
The guardian urges that the exploitation of the elderly is a problem to which banks must be alert. The guardian argues that the circumstances in the present case were suspicious because the elderly customer withdrew large amounts of cash from a personal checking account. Also said to be suspicious is the fact that the withdrawals occurred using counter checks or starter checks for the recently opened account.[2]
On the question of competency of a bank customer, the Uniform Commercial Code draws a “bright line” rule. The Code states:
674.405 Death or Incompetence of Customer.—
(1) A payor or collecting bank’s authority to accept, pay, or collect an item or to account for proceeds of its collection, if otherwise effective, is not rendered ineffective by incompetence of a customer of either bank existing at the time the item is issued or its collection is undertaken if the bank does not know of an adjudication of incompetence. Neither death nor incompetence of a customer revokes the authority to accept, pay, collect or account until the bank knows of the fact of death or of an adjudication of incompetence and has reasonable opportunity to act on it.
§ 674.405(1), Fla.Stat. (Supp.1992) (emphasis added).
The U.C.C. official comment states:
Purposes:
[[Image here]]
2. Subsection [1] follows existing decisions which hold that a drawee (payor) bank is not liable for the payment of a check before it has notice of the death or incompetence of the drawer. The justice and necessity of the rule are obvious. A check is an order to pay which the bank *1017 must obey under penalty of possible liability for dishonor. Further, with the tremendous volume of items handled any rule which required banks to verify the continued life and competency of drawers would be completely unworkable.
Uniform Commercial Code Comment, 19B Fla.Stat.Annot. (Supp.1993) at 204 (emphasis added). See also 7 Ronald A. Anderson, Uniform Commercial Code § 4-405:5 (3d ed. 1984); 1 James J. White & Robert S. Summers, Uniform Commercial Code § 18-3, at 887-88 (3d ed. 1988); Lincoln Nat’l Bank & Trust Co. v. Peoples Trust Bank, 177 Ind.App. 312, 379 N.E.2d 527 (1978). As there was admittedly no adjudication of incompetency until after the transactions in question, the bank proceeded consistently with the Uniform Commercial Code. See § 674.103(3), Fla.Stat. (Supp.1992). In light of the U.C.C. provision and official comment, the bank did not have a duty to inquire into the customer’s competency.[3]
The guardian argues, however, that this case is not aimed at the problem of undetected incompetency. Instead, the guardian’s main concern is the problem of exploitation of the elderly through scams invented by unscrupulous con artists. According to the guardian, this is a broader problem which victimizes elderly depositors who are gullible enough to be taken in, and is not a phenomenon directed solely at persons who are incompetent.
Subsequent to the events which occurred in this case, a new statute became effective which partially speaks to the guardian’s concern. The legislature added banks, savings and loan associations, and credit unions to the entities who are required to report possible exploitation of the elderly to the Department of Health and Rehabilitative Service’s Central Abuse Registry.
As amended, the statute now provides that any “[b]ank, savings and loan, or credit union officer, trustee, or employee, who knows, or has reasonable cause to suspect, that an aged person or disabled adult is an abused, neglected, or exploited person shall immediately report such knowledge or suspicion to the central abuse registry ... on the single state-wide toll-free telephone number.” § 415.103(l)(a)(7), Fla.Stat. (1991) (emphasis added). Failure to report is a misdemeanor. Id. § 415.111(1).
It is now the obligation of banks, savings and loan associations, and credit unions to develop compliance programs so that their officers, trustees, and employees know when they should make a report on the toll free number. The guardian presented expert testimony that there are a number of “red flags” which may be indicative of exploitation. Financial institutions must give clear instructions to officers and front line employees so that they will know what should be reported to the Department, and when and how to report it.[4] It should be noted that the law places the reporting obligation not only on each bank, savings and loan association, and credit union, but also each officer, trustee, and employee individually.[5]
The guardian urges, however, that we should impose on financial institutions a broader obligation. The guardian argues that where an elderly customer seeks to withdraw large amounts of cash from a personal account, the bank has a duty to halt the transaction temporarily so that an officer can inquire into the purpose of the cash withdrawal. If the bank officer is satisfied that the customer knows what he or she is doing and is not being victimized, *1018 then the bank would allow the cash withdrawal. If the officer is not satisfied, then the authorities would be summoned for a more thorough inquiry.[6]
In essence the guardian urges us to impose a new standard of care on the bank where an elderly customer is writing a check to withdraw the customer’s own funds from his or her account. The bank would be obliged to inquire into the purpose of a large cash withdrawal by an elderly customer, and would be obliged to halt the transaction if not satisfied with the explanation. This would work a significant change in the depositor-financial institution relationship, and would represent a marked departure from existing law.
If such a new mandatory duty of care is to be created, it should be brought about by the legislature after appropriate study. In that way customer rights and financial institution responsibilities can be clearly stated and clearly understood. At present we think the Uniform Commercial Code runs counter to the guardian’s position. While we are entirely sympathetic to the goals articulated by the guardian and the trial court, we must reverse the final judgment. This ruling renders moot the guardian’s appeal, consolidated herewith, of the denial of attorney’s fees under section 45.-061, Florida Statutes (1991).
One of the expert witnesses testified below that a number of banks have developed voluntary programs for attempting to detect and thwart scams directed at the elderly. Experts also testified that banks frequently attempt to dissuade elderly customers from leaving the premises with large amounts of cash, for reasons of personal safety among other things. Nothing we say here is intended to limit or discourage such voluntary measures.
As to Republic National Bank’s appeal, reversed and remanded with directions to enter judgment for defendant. As to the guardian’s appeal, affirmed.

. The transactions were:
Date Amount
5/11/89 $ 2,500.00
6/14/89 $ 2,000.00
7/03/89 $ 2,500.00
7/07/89 $ 6,000.00
7/11/89 $ 5,000.00
7/13/89 $15,000.00
7/17/89 $26,949.00
In the case of the withdrawal of $26,949, Ms. Johnson used $10,000 to purchase a certificate of deposit and took the balance in cash.

. There is no evidence regarding Ms. Johnson's demeanor on the occasions in question. With regard to the withdrawals of $15,000 and $26,-949, Ms. Johnson presented the documentation which was necessary for the bank to complete its Form 4789 Currency Transaction Reports. The only specific recollection bank personnel had of Ms. Johnson was when an officer assisted her on a matter relating to her account which did not involve a withdrawal. The officer stated that on that occasion Ms. Johnson was lucid and appeared to understand what she was doing.

.We do not mean to suggest that the bank would never have a responsibility to take steps on behalf of its customer. If, for example, the customer had a seizure or stroke or physically collapsed while on the premises, or became obviously delusional, then the bank would have to take prudent action. Here, however, the guardian argues that an inquiry should have been triggered on account of the size of the cash withdrawals.

. Presumably the Department of Health and Rehabilitative Services and law enforcement agencies will be available for consultation on implementation of the new statute.

. We express no opinion on the question whether failure to comply would result in civil liability-

. Although the facts of the present case are suspicious, it is unknown what the result of any such inquiry by a bank officer in this case would have been.