**Chad DUNSON, Appellant–Petitioner,**

**v.**

**Terry DUNSON and Teresa Dunson, Appellees–Respondents.**

**No. 34A02–0006–CV–375.**

Court of Appeals of Indiana.

Feb. 26, 2001.

Rehearing Denied April 18, 2001.

Dan J. May, Kokomo, IN, Attorney for Appellant.

Edward P. Dechert, Kokomo, IN, Attorney for Appellee Terry Dunson.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-petitioner Chad Dunson ("Chad") appeals the trial court's judgment denying his petition for child support and educational order and motion for provisional orders and granting his father's petition to emancipate. We affirm in part, vacate in part, and remand.

### Issues

■ Chad raises eight issues for review, which we combine and restate as follows: [1]

I.  whether the trial court erred in granting the petition to emancipate filed by Chad's father, appellee-respondent Terry Dunson ("Father");

II.  whether the trial court erred in denying Chad's petition for child support and educational order and motion for provisional orders; and

III.  whether the trial court erred in not joining Brenda Hembree ("Hembree") to the action as his de facto custodian.

### Facts [2] and Procedural History [3]

■ Father and appellee-respondent Teresa Dunson ("Mother") were married September 27, 1980. Three children were born to this marriage: Chad on December

---

**1.** Chad also challenges the trial court's denial of his motions to appeal as a pauper. Because this court granted Chad's subsequent petition for leave to prosecute as a pauper in aid of appellate jurisdiction, we need not address this issue. We further note that Father cross-appeals the trial court's voiding as fraudulent the agreed entry discussed. *infra.* Father's argument on this point contains a brief discussion of dominant and subservient parties,. but fails to address the elements of actual fraud. *See, e.g., Epperly v. Johnson,* 734 N.E.2d 1066, 1073 (Ind.Ct.App.2000). He has therefore waived this issue for review. *See Nyby v. Waste Mgmt., Inc.,* 725 N.E.2d 905, 912 (Ind.Ct.App.2000), *trans. denied.*

**2.** We remind both parties that "[t]he summary of facts required by [Indiana Appellate Rule] 8.3(A)(5) is not intended to be a portion of the [party's] argument. It should be a concise narrative summary of the facts in a light most favorable to the judgment. It should not be a summary of each witness['s] testimony. It is to be informative, not persuasive." *Moore v. State,* 426 N.E.2d 86, 90 (Ind.Ct.App.1981).

**3.** We heard oral argument in this case on January 31, 2001, in Indianapolis.

25, 1980, Tony on April 16, 1982, and Joshua on July 14, 1987. Mother petitioned to dissolve the marriage on December 5, 1990. The marriage was dissolved on February 12, 1991; Mother was given custody of the three children, for whom Father paid support pursuant to an undivided order. On August 11, 1998, after several modifications of Father's support obligation, Mother and Father filed an agreed entry granting Mother physical custody of Joshua and granting Father physical custody of Tony. Mother and Father agreed to share joint custody of Chad, as well as "major decisions regarding Chad's education, religion, and healthcare. It [was] anticipated that Chad [would] spend an equal amount of time with both parents." The entry terminated all future support obligations of both parents, but Father agreed to pay $2,000 in delinquent support.

On December 10, 1999, Chad filed a motion for provisional orders for child support, claiming that his parents had "abandoned" him since 1997 and had "failed to provide [him] with support, income or money to support himself since the Fall of 1997." On this date, Chad also filed a petition for child support and educational order and a motion for relief from judgment from the agreed entry. On January 7, 2000, Father filed a petition to emancipate Chad and terminate the support order. On this date, Chad filed a motion for written findings. After hearings in January and March 2000, the trial court entered its judgment on April 20, 2000.

With respect to Chad's motion for relief from judgment, the trial court's findings read in relevant part as follows:

2. Chad has not lived with his Mother since the Fall of 1996, at an age of 15 years of age. At the start of his Freshman year at Northwestern [High School] he and his brother moved from the Mother's home to the home of an aunt.[4]

3. Chad attended Northwestern H.S. for his freshman year.

4. In the Fall of 1997, Chad moved to another Aunt's home, Brenda Hembree, where he still resides today.

. . . .

7. At no time since the Fall of 1996 and particularly since August 11, 1998 [has] either parent had the physical custody, care of, or control of Chad.

8. At no time since August 11, 1998 has the Father, or the Mother, paid any sums for support of Chad to Brenda Hembree.

9. In the Fall of 1997, the mother paid $70.00 per week for 3 months to Brenda Hembree, and nothing since.

10. Except for providing sums of money to his son in the approximate amount of $100.00, the Father has contributed nothing to the support of Chad since August 11, 1998, excluding Christmas gifts of clothing.

11. Except for providing health insurance available through her employment, the Mother has provided nothing for the support of the child.

12. Both parents, since the Fall of 1996 when Chad was 15 years of age, have acquiesced in his living with his extended family, his maternal aunts. Neither parent has taken steps to exercise any parental rights to their agreed "joint custody".

13. Chad is currently in his senior year at Northwestern H.S. and will graduate in June of 2000.

14. Chad has worked at part time jobs since living with his aunt Hembree: for one month at McDonalds and

4. At the hearing, Chad referred to this aunt as "Aunt Nancy." In his brief and at oral argument, appellant's counsel insisted that Chad was "abandoned" by his parents, despite Chad's testimony that it was his idea to leave Mother's residence and move in with Aunt Nancy, see record at 289–90, and that it had "never crossed [his] mind" to live with Father. See id. at 318. Mother also testified that it was Chad's idea to move in with Aunt Nancy. See id. at 169.

for over one year in the National Guard Reserves. Chad's income has been less than $2000.00 per year.

15. Chad has been dependent on his extended family since the Fall of 1996 for shelter, clothing, food, and parental supervision.

16. Chad is a better than average student with no problems with the law and is scheduled to graduate from Northwestern H.S. in June 2000.

The trial court's conclusions read in relevant part as follows:

B. The "joint custody" agreement filed by the Father on August 11, 1998, which was prepared by the Father's attorney, and which was executed by the Mother without the advi[c]e of counsel, and which agreement was not consented to or joined in by the child Chad, is void, contrary to law, and against public policy as it was an attempt by the parties to contract away or waive Chad's legal right (being age 17) to receive parental support from his parents. Said agreement was a fraud upon the Court in that the Mother and the Father, were not exercising, in fact, and never intended to exercise, joint custody of their child Chad; and their only intent was to avoid providing child support to their child Chad, as required by Indiana law. The fraudulent joint custody agreement of 8/11/98 filed by the Father which attempted to waive and/or contract away the parents' responsibility to support Chad should be and is hereby set aside and held for naught as being fraud and void as against public policy. Chad, at the time of the entry of said agreed order was under a legal disability, and being age 17 at that time, any statute of limitation and/or requirement under Ind.Trial Rule 60(B) for the bringing of his Motion for Relief From Judgment for intrinsic fraud within one year of his 18th birthday having filed his Motion for Relief From Judgment on 12/10/99, within one year of his 18th birthday, 12/25/99.

The trial court granted Chad's motion for relief from judgment, voided all portions of the 1998 agreed entry pertaining to Chad, and awarded Chad $2,400 in attorney fees "[b]ecause fraud formed the basis of his action."

With respect to Father's motion to emancipate, the trial court incorporated the above factual findings and entered separate conclusions, which read in relevant part as follows:

It is undisputed that Chad has not resided with either his mother or father since Fall of 1996. At that time both Chad and his younger brother Joshua moved in with an aunt. Joshua later returned to his mother's house but Chad refused to live with his mother, who resided in a trailer, and moved in with the Hembrees. It was solely Chad's decision to move in with the Hembrees. He could have at all times lived in the home of either his mother or father. However, the Hembrees had a large home in the Northwestern School District where Chad wanted to go to school. It is equally undisputed that Chad has not been under the care or control of either parent since Fall 1996. At no time since the Fall of 1996 has either parent had the physical custody, care or control of Chad as required by [Indiana Code Section] 31–16–6–6(b)(3)(A) or an individual or agency approved by the Co[ur]t as required by [Indiana Code Section] 31–16–6–6(b)(3)(B). The Hembrees solely provided for Chad's care, control and support and established the rules and regulations by which he was required to abide. His parents did none of the above.

In its order and judgment, the trial court found Chad to be emancipated under section 31–16–6–6(b)(3) and stated,

Since emancipation is deemed effective as of the actual date of emancipation, rather than the date of filing of a Petition, the Court could terminate Respondent's support obligation retroactive to the Fall of 1996, but rather finds Chad

to be emancipated as of August 11, 1998 since neither Respondent/Father [n]or Respondent/Mother [has] asked for reimbursement of support prior to that date.

The trial court denied Chad's motion for provisional orders and petition for child support and educational order "inasmuch as the Court has determined that [Chad] was emancipated on 8/11/98."

On May 3, 2000, Chad filed a motion for order of appellate costs and fees for an appeal/petition to admit him as an indigent litigant, a motion for appointment of pauper's counsel, a motion for order of appellate fees, and an application to proceed as a pauper. The trial court denied these motions by docket entry two days later. On July 7, 2000, this court granted Chad's petition for leave to prosecute as a pauper in aid of appellate jurisdiction.

### Discussion and Decision

### I.  Father's Petition to Emancipate

Chad challenges the trial court's determination of emancipation and claims that he is "entitled to enforce the duty of support from his parents and collect the arrearages." Because the trial court entered findings of fact and conclusions pursuant to Chad's request, we adhere to the following standard:

> On review, we will not set aside the judgment unless it is clearly erroneous. A judgment is clearly erroneous when the evidence does not support the findings of fact or when the findings of fact do not support the conclusions. In determining whether the findings and judgment are clearly erroneous, we will neither reweigh the evidence nor judge the credibility of witnesses, but we will consider only the evidence and reasonable inferences therefrom which support the judgment.

*Lawson v. Lawson,* 695 N.E.2d 154, 155–56 (Ind.Ct.App.1998) (citations omitted).

Our analysis focuses on Indiana Code Section 31–16–6–6, which governs termination of child support due to the emancipation of the child:

(a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless *any* of the following conditions occurs:

(1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order for educational needs may continue in effect until further order of the court.

(2) The child is incapacitated. In this case the child support continues during the incapacity or until further order of the court.

(3) The child:

(A) is at least eighteen (18) years of age;

(B) has not attended a secondary or postsecondary school for the prior four (4) months and is not enrolled in a secondary or postsecondary school; and

(C) is or is capable of supporting himself or herself through employment.

In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist. However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated.

(b) For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:

(1) has joined the United States armed services;

(2) has married; or

(3) *is not under the care or control of:*

(A) *either parent;* or

(B) an individual or agency approved by the court;

the court shall find the child emancipated and terminate the child support.

(Emphases added.) "The party seeking emancipation bears the burden of proving that the child is emancipated." *Quillen v. Quillen*, 659 N.E.2d 566, 576 (Ind.Ct.App. 1995), *vacated in part on other grounds*, 671 N.E.2d 98 (Ind.1996). As previously mentioned, the trial court concluded that Chad was emancipated under subsection (b) because neither parent nor a court-approved individual or agency had care or control of him since the fall of 1996. Chad completely disregards this rationale and instead argues under subsection (a)(3) that he was still in high school and incapable of supporting himself. By failing to challenge the stated basis for the trial court's conclusion, Chad has waived consideration of this issue. *See Lincoln Nat'l Bank and Trust Co. of Fort Wayne v. Peoples Trust Bank*, 177 Ind.App. 312, 314–15, 379 N.E.2d 527, 529 (1978) (appellant waived issue by failing to challenge portion of trial court's judgment). However, we believe that a limited review of emancipation is necessary to clarify the important distinction between subsections (a)(1) and (a)(3) of section 31–16–6–6.

In 1964, before the enactment of this statute's precursor,[5] our supreme court stated, "Emancipation frees a child from the care, *custody* and control of its parents, what constitutes emancipation of a minor child is a question of law, but whether there has been an emancipation is a question of fact." *Stitle v. Stitle*, 245 Ind. 168, 182, 197 N.E.2d 174, 182 (1964) (referring to 22 I.L.E. *Parent and Child* § 18) (emphasis added). Two years later, our court cited *Stitle* for this principle and relied on more venerable cases for the following: "Emancipation of a child is never presumed but must be established by competent evidence, although to do so does not require proof of an express or formal contract. Emancipation may be shown by circumstantial evidence, by express agreement, or by the conduct of the parties, or by the acts and conduct of the parent and child." *Allen v. Arthur*, 139 Ind.App. 460, 463–64, 220 N.E.2d 658, 660 (1966) (citations omitted). These common-law standards have endured for over thirty years.[6]

In 1983, the emancipation statute read in relevant part as follows:

(d) The duty to support a child under this chapter ceases when the child reaches his twenty-first birthday unless:

(1) the child is emancipated prior to his twenty-first birthday in which case the child support, except for educational needs, terminates at the time of emancipation; however, an order for educational needs may continue in effect until further order of the court; or

(2) the child is incapacitated in which case the child support continues during the incapacity or until further order of the court.

IND.CODE § 31–1–11.5–12 (as enacted by 1983 Ind. Acts 280 § 1). That same year, our court stated in *Green v. Green*, 447 N.E.2d 605 (Ind.Ct.App.1983):

Emancipation frees a child from the care, custody and control of its parent for the remainder of the child's minority. [Citation to *Stitle* omitted.] What constitutes emancipation is a question of law. [Citation to *Brokaw* omitted.] However, whether there has been an emancipation is a question of fact. [Ci-

---

5. *See* 1973 Ind. Acts 297 § 1.

6. *See, e.g., Brokaw v. Brokaw*, 398 N.E.2d 1385 (Ind.Ct.App.1980):

Emancipation frees a child from the care, custody and control of its parents. What constitutes emancipation of a minor child is a question of law, but whether there has been an emancipation is a question of fact. Emancipation of a child is never presumed, but must be established by competent evidence. Such evidence may be circumstantial. It may also be demonstrated by express agreement or by the conduct and acts of the parent and child.

*Id.* at 1388 (citations omitted); *see also Lawson*, 695 N.E.2d at 156 ("However, what constitutes emancipation of a minor child is a question of law, but whether there has been an emancipation is a question of fact.").

tation omitted.] There are no presumptions of emancipation. It must be demonstrated from the attendant facts, [citation to *Allen* omitted].

Indiana law recognizes several situations in which a minor child *may place himself* beyond the control and support of its parent.[7] This may be done by voluntarily leaving the home of a parent *and assuming responsibility for its own care. Pocialik v. Federal Cement Tile Co.*, (1951) 121 Ind.App. 11, 97 N.E.2d 360.[8] Emancipation may also occur when a minor child enters the military service. [Citation omitted.] The salient feature of these situations is *the child creates a new relationship between itself and its parent*, relieving the parent from the responsibilities of support. Marriage of a minor child creates a similar relationship. Once married, a dependent spouse no longer looks to its parent for support but relies instead upon the other spouse for support.

*Id.* at 609 (emphases added).

In 1984, the legislature amended section 31–1–11.5–12 in relevant part as follows:

(d) The duty to support a child under this chapter ceases when the child reaches his twenty-first birthday unless:

(1) the child is emancipated prior to his twenty-first birthday;

(2) the child is incapacitated in which case the child support continues during the incapacity or until further order of the court; or

(3) the child:

(A) is at least eighteen (18) years old;

(B) has not attended a secondary or postsecondary school for the prior four (4) months and is not enrolled in such a school; and

(C) is or is capable of supporting himself through employment; in which case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist; [provisions for partial support omitted].

(e) *For purposes of determining if a child is emancipated under subsection (d)(1), if the court finds that the child:*

(1) has joined the armed services;

(2) has married; or

(3) *is not in the care or control of either of his parents;*

*the court shall find the child emancipated and terminate the child support.*

1984 Ind.Acts 152 § 1 (emphases added). In 1987, the legislature amended subsection (e)(3) to provide that a court may find a child emancipated before age twenty-one if the child "is not under the care or control of: (A) either parent; or (B) an individual or agency approved by the court[.]" 1987 Ind.Acts 50 § 4. This subsection has remained substantially unchanged since 1987. *See* Ind.Code § 31–16–6–6(b).

In 1990, the *Taylor* court recognized that subsections (d)(1) and (d)(3) of section 31–1–11.5–12 provide "separate and distinct exception[s] to the general rule that support obligations continue until the child reaches age 21." 558 N.E.2d at·883; *see also* Ind.Code § 31–16–6–6(a)(1), -(a)(3).[9]

---

7. *Taylor v. Chaffin*, 558 N.E.2d 879 (Ind.Ct. App.1990), cites *Brokaw* for this proposition. *See id.* at 882. However, our research indicates that *Green* was the first case to use this language.

8. *See Pocialik*, 121 Ind.App. at 17–18, 97 N.E.2d at 363:

The Indiana cases recognize that as a general rule, "A parent is not civilly liable for the support of his adult child * * *. There is no civil obligation to support a child, who, having reached an age where he is able to provide for himself, has left the

home of his parents, and who is no longer amenable to parental discipline or restraint, and who no longer renders service to the parent."

9. *Taylor* cites *Brancheau v. Weddle*, 555 N.E.2d 1315 (Ind.Ct.App.1990), in which Judge Robertson noted that the appellant's brief focused solely on section 31–1–11.5–12(d)(3): "Accordingly, we have no occasion to consider whether [the child] was 'emancipated' as that term is used in I.C. 31–1–11.5–12(d)(1)." *Id.* at 1317 n. 1.

Since the child in *Taylor* was enrolled in and attending college classes, the court found subsection (d)(3) inapplicable and instead determined whether she was emancipated under subsection (d)(1):[10] "Our inquiry under that section is not whether the child is *capable* of supporting herself but whether the child *is in fact supporting herself without the assistance of her parents.*" 558 N.E.2d at 883 (emphases added). In *Young v. Young*, 654 N.E.2d 880 (Ind.Ct.App.1995), *trans. denied*, our court stated, "According to I.C. § 31–1–11.5–12(e)(3)(A), emancipation occurs when the child *places himself* beyond the control, *custody*, and care of either parent. Our inquiry under that section is whether the child is in fact supporting herself without the assistance of her parents." *Id.* at 883 (citing *Taylor*) (emphases added). Thus, common-law emancipation principles seem to have crept unbidden into the statutory realm.[11]

In *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19 (Ind.Ct.App.1999), *trans. denied*, we observed that a statute in derogation of the common law must be strictly construed. *See id.* at 25 (discussing survival statute). We further stated,

> This Court must examine the structure of the statute as a whole. It is a rule of statutory construction that the legislature did not intend by statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication. We must presume that the legislature is

aware of the common law, and a statute will not be construed as changing the common law further than the import of its words. An abrogation of the common law will be implied (1) where a statute is enacted which undertakes to cover the entire subject treated and was clearly designed as a substitute for the common law; or (2) where the two laws are so repugnant that both in reason may not stand.

> We presume that the General Assembly intended its language to be applied in a logical manner consistent with the statute's underlying policies and goals. We also presume that the legislature would not intend an unreasonable or absurd result. However, we cannot and do not engage in statutory interpretation unless the statutory language is ambiguous, or susceptible to more than one interpretation. If the statute in question is not ambiguous, we must give effect to the plain, ordinary, and usual meaning of the words of the statute.

*Id.* at 25–26 (citations and internal quotation marks omitted).

Recognizing that past decisions have addressed the emancipation question in terms of a child placing himself beyond parental custody and his ability to support himself without parental assistance, we nevertheless conclude that section 31–16–6–6(b)(3)(A) unambiguously requires only that a child not be under the care or control of either parent to be found

---

**10.** *See also McKay v. McKay*, 671 N.E.2d 194, 198–99 (Ind.Ct.App.1996) (drawing same distinction where child was enrolled in and attending college classes; noting that although child was neither legally nor "emotionally" under his father's care or control, he remained under his mother's care and control and was therefore not emancipated), *trans. denied*.

**11.** *See, e.g., In re Marriage of Brown*, 597 N.E.2d 1297, 1300 (Ind.Ct.App.1992) ("Rather, emancipation occurs when the child places herself beyond the control, custody and care of her parents.") (citing IND.CODE § 31–1–11.5–12(e) and *Taylor*); *Brown v. Brown*, 581 N.E.2d 1260, 1263 n. 1 (Ind.Ct.App.1991)

("'Emancipation' occurs when a minor child becomes free of the care, custody, and control of its parents while still a minor.") (citing *Stitle* and *Green*); *Kirchoff v. Kirchoff*, 619 N.E.2d 592, 596 n. 3 (Ind.Ct.App.1993) ("'Emancipation' occurs when a minor child is no longer in the care, custody, and control of either parent.") (citing *Brown*); *Quillen*, 659 N.E.2d at 576 ("To determine whether a child has placed herself beyond the control, custody and care of either parent, we consider whether the child is in fact supporting herself without the assistance of her parents.") (citing *Young*); *Lawson*, 695 N.E.2d at 156 ("Emancipation frees a child from the care, custody and control of its parents.") (citing *McKay*).

emancipated under Indiana law. Our conclusion does not affect the well-settled principle that "what constitutes emancipation of a minor child is a question of law, but whether there has been an emancipation is a question of fact." *Lawson*, 695 N.E.2d at 156. Nor should our conclusion be interpreted as permitting or even encouraging minor children to emancipate themselves "unilaterally" without recourse for custodial parents or compensation for third parties who assume responsibility for a child's care and control. A concerned parent may seek to have a minor child returned to her custody by initiating proceedings in juvenile court, and a third-party caregiver may be joined in a related custody action as a de facto custodian. *See* IND.CODE § 31–9–2–35.5 (defining de facto custodian); *see also id.* § 31–17–2–8.5(c) ("If a court determines that a child is in the custody of a de facto custodian, the court shall make the de facto custodian a party to the proceeding."). Every parent has a duty to support his or her child, *Elbert v. Elbert*, 579 N.E.2d 102, 112 (Ind. Ct.App.1991), and a minor child does not have unbridled power to emancipate himself and nullify a valid support order simply by leaving the care and control of his custodial parent, no matter how compelling or trivial the reason.[12]

■■■ In the instant case, however, the trial court found that "[i]t was solely Chad's decision to move in with the Hembrees"; that Mother and Father had "acquiesced in [Chad's] living with his extended family" and had not "taken steps to exercise any parental rights to their agreed 'joint custody'"; and that Chad had been dependent on the Hembrees "for shelter, clothing, food, and parental super-vision." Notwithstanding health insurance provided through Mother's employment[13] and negligible clothing and financial contributions from both parents, the record clearly supports the trial court's conclusion that the Hembrees "solely provided for Chad's care, control and support and established the rules and regulations by which he was to abide." We therefore affirm the trial court's determination that Chad was emancipated under section 31–16–6–6(a)(1) and thus was not entitled to child support.

However, we have consistently held that "emancipation is deemed effective as of the date of emancipation, rather than the date of filing of the petition." *Thacker v. Thacker*, 710 N.E.2d 942, 945 (Ind.Ct.App. 1999). The trial court abused its discretion in declaring Chad to be emancipated as of August 11, 1998, when it had already concluded that he had not been under the care or control of either parent since the fall of 1996. We therefore vacate this portion of the trial court's judgment and remand with instructions to find Chad emancipated as of the fall of 1996.

## II. Chad's Petitions for Support, Education, and Provisional Orders

■■■ Chad offers no discernible argument with respect to the trial court's denial of these petitions; he has therefore waived consideration of this issue on appeal. *See Abex Corp. v. Vehling*, 443 N.E.2d 1248, 1255 (Ind.Ct.App.1983) (citing, *inter alia*, App. R. 8.3(A)(7)).

## III. Hembree as De Facto Custodian

■■■ Finally, Chad contends that the trial court erred in not joining Hembree to

---

12. *See Bussert v. Bussert*, 677 N.E.2d 68, 71 (Ind.Ct.App.1997) ("It has long been established that the right to support lies exclusively with the child, and that a parent holds child support payments in trust for the child's benefit."), *trans. denied.* We also acknowledge that "[a] custodial parent has no right to enter into an agreement or to contract away the right of a child to support from a parent." *Elbert*, 579 N.E.2d at 112 n. 6. However, because the trial court voided the 1998 agreed entry as fraudulent and contrary to law, we need not address this matter further.

13. Hembree testified that Mother and Father were "suppose[d]" to provide health insurance for Chad. When asked whether Mother had provided her with an insurance card from Chrysler, Mother's employer, Hembree replied, "Well, she's got it unless she gave Chad one. I don't know anything." Record at 275.

970

the action as his de facto custodian. Chad has waived review of this issue by failing to timely raise it before the trial court.[14] *See Rausch v. Reinhold,* 716 N.E.2d 993, 1002 (Ind.Ct.App.1999) ("An appellant may not raise an issue on appeal that was not first presented to the trial court."), *trans. denied.*

Affirmed in part, vacated in part, and remanded.

BAKER and BARNES, JJ., concur.

---

14. In his proposed conclusions submitted to the trial court, Chad suggested that Hembree, "having participated in this action," be joined as a de facto custodian "pursuant to I.C. 31–14–13–2.5(c)." We observe that this section applies only to custody considerations following determination of paternity; sections 31–17–2–8 and 8.5 pertain to de facto custodians in the custody order/modification context. More dispositively, Chad neither filed a motion seeking determination of Hembree's custodial status nor raised this issue at the hearing. On a related note, Chad misstates the record in claiming that the trial court found Hembree to be his "true custodian"; this language appears in Chad's proposed finding number 8 but does not appear in the trial court's findings. *Cf.* record at 79; *id.* at 117. We remind Chad's counsel of his duty of candor toward the tribunal under Indiana Professional Conduct Rule 3.3.