Chad DUNSON, Appellant
(Petitioner Below),

v.

Terry and Teresa DUNSON, Appellees
(Plaintiffs Below).

No. 34S02–0108–CV–370.

Supreme Court of Indiana.

June 12, 2002.

Dan J. May, Kokomo, IN, Attorney for Appellant.

Edward P. Dechert, Kokomo, IN, Attorney for Appellees.

BOEHM, Justice.

This case addresses the emancipation of a minor child who is not under the care or control of either parent. We hold that for a child to be emancipated pursuant to Indiana Code section 31–16–6–6(b)(3), the child must not only be under the care or control of neither parent, but the child must also (1) initiate the action putting the child outside the parents' control and (2) in fact be self-supporting.

**Facts and Procedural Background**

Terry and Teresa Dunson were married September 27, 1980, and had three children: Chad, born December 25, 1980; Tony, born April 16, 1982; and Joshua, born July 14, 1987. When the marriage was dissolved in 1991, Teresa was given custody of the three children and Terry was ordered to pay child support in the amount of $75 a week. After several modifications of Terry's support obligation, on August 11, 1998 the couple filed and the court approved an agreed entry granting physical custody of Joshua to Teresa and physical custody of Tony to Terry. The agreed entry provided for joint custody of

Chad and stated, "It is anticipated that Chad will spend an equal amount of time with both parents." The agreed entry provided that because both Terry and Teresa were employed at Chrysler Motors, neither would pay child support. Finally, Terry agreed to pay $2,000 of delinquent support obligations.

On December 10, 1999, Chad filed a motion for provisional orders for child support. Chad asserted that his parents "abandoned" him in 1997 and since then have failed to provide him with any income or support. Chad requested a "provisional order for child support and an educational order retroactive to the date of the abandonment by the parents." In response, Terry filed a petition to emancipate Chad and terminate the support order.

After two hearings, at Chad's request, the trial court entered findings of facts and conclusions of law. The trial court found the following: Chad has not lived with his mother since he was 15 years old. In the fall of 1996, at the start of Chad's freshman year in high school, Chad and his brother moved to the home of an aunt. In the fall of 1997, Chad moved to the home of Brenda Hembree, another aunt, where "he still resides today." Neither parent has had physical custody, care, or control of Chad since the fall of 1996. The parents have provided Chad with little support since August 11, 1998,[1] and Chad has been dependent on his aunts for shelter, clothing, food, and parental supervision. Since the fall of 1996, Terry and Teresa have acquiesced in Chad's living arrangements with his maternal aunts, and neither parent has taken steps to exercise any parental rights under their agreed "joint custody." Teresa paid Hembree $70 a week for three months in late 1997, but has paid nothing since then. Terry has never paid Hembree for Chad's support. At the time of the hearing, Chad was a senior at Northwestern High School and was on schedule to graduate in June 2000. Chad has worked part-time jobs since living with Hembree, including working at McDonald's and serving in the National Guard, but his income has been less than $2,000 per year.

The trial court granted Chad's motion for relief from judgment due to fraud and rescinded the August 11, 1998 agreed order as it pertained to Chad. The trial court then granted Terry's motion to emancipate Chad on the ground that Chad had not been under the care or control of either parent as required by section 31–16–6(b)(3)(A) or (B).

The Court of Appeals held that Chad waived any appeal challenging his emancipation by failing to address the stated basis for the trial court's conclusion that Chad was emancipated. The Court of Appeals also found that Chad offered no "discernible argument" with respect to the trial court's denial of the support and educational orders, and held that Chad waived review of his argument that Hembree was a de facto custodian and therefore a necessary party to this proceeding by failing to raise the issue in the trial court. *Dunson v. Dunson,* 744 N.E.2d 960 (Ind.Ct.App. 2001). We granted transfer.

In this appeal, Chad argues: (1) the trial court erred in finding Chad emancipated; (2) the trial court erred in finding that Hembree was not a de facto custodian; and (3) that his parents should be respon-

---

1. The trial court found that "[e]xcept for providing sums of money to his son in the approximate amount of $100.00, the Father has contributed nothing to the support of Chad since August 11, 1998, excluding Christmas gifts of clothing. [E]xcept for providing health insurance available through her employment, the Mother has provided nothing for the support of the child."

sible for his appellate attorney's fees under Indiana Code sections 34–10–1–2, 31–15–10–1, and 31–16–11–1. Chad requests that appropriate support be ordered against Chad's parents in favor of Hembree retroactive to August 11, 1998.

### Standard of Review

■ The trial court's findings were entered pursuant to Indiana Trial Rule 52(A) which prohibits a reviewing court on appeal from setting aside the trial court's judgment "unless clearly erroneous." The court on appeal is to give due regard to "the opportunity of the trial court to judge the credibility of the witnesses." T.R. 52(A). When a trial court has made special findings of fact, as it did in this case, its judgment is "clearly erroneous only if (i) its findings of fact do not support its conclusions of law or (ii) its conclusions of law do not support its judgment." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind.1996).

### I. The Requirements for Emancipation

■ "What constitutes emancipation is a question of law, while whether an emancipation has occurred is a question of fact." *Quillen v. Quillen*, 659 N.E.2d 566, 576 (Ind.Ct.App.1995) *adopted in part by Quillen v. Quillen*, 671 N.E.2d 98, 100 (Ind.1996). Emancipation cannot be presumed, but must be established by competent evidence by the party seeking emancipation. *Id.* Indiana Code section 31–16–6–6(b) provides:

(b) For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:

    (1) has joined the United States armed services;

    (2) has married; or

    (3) is not under the care or control of:

        (A) either parent; or

        (B) an individual or agency approved by the court;

the court shall find the child emancipated and terminate the child support.

(emphasis added). The trial court determined that emancipation was a factual question "dealing with parental control over a minor" and found that Chad was emancipated because (1) Chad had not resided with his parents since the fall of 1996, (2) it was Chad's sole decision to move in with the Hembrees, (3) neither of Chad's parents had physical custody, care, or control of Chad as required by section 6(b)(3)(A), and (4) the Hembrees alone provided for Chad's care, control, and support.

Although the Court of Appeals found Chad waived consideration of the emancipation issue by focusing his arguments on subsection (a)(3) rather than challenging the trial court's conclusion under subsection (b)(3), the Court of Appeals nevertheless found subsection (b)(3) controlling:

Recognizing that past decisions have addressed the emancipation question in terms of a child placing himself beyond the parental custody and his ability to support himself without parental assistance, we nevertheless conclude that section 31–16–6–6(b)(3)(A) unambiguously requires only that a child not be under the care or control of either parent to be found emancipated under Indiana law.

*Dunson*, 744 N.E.2d at 968–69. The Court of Appeals therefore affirmed the trial court's conclusion that Chad became emancipated by putting himself outside the care and control of his parents.

■ We disagree with the Court of Appeals' holding that emancipation requires only that a child not be under the care or control of either parent. Rather, we reaffirm the longstanding view that emancipation requires that (1) the child initiate the

action putting itself outside the parents' control and (2) the child in fact be self-supporting.

■ Indiana Code section 31–16–1–2 states that "[t]he purpose and policy of [31–16–6 is] to provide for child support." We believe the legislature's intent in enacting the emancipation statute is to require that parents provide protection and support for the welfare of their children until the children reach the specified age or no longer require such care and support. Reading subsection (b)(3) in isolation to permit emancipation of children who are no longer under parents' care or control conflicts with this underlying purpose. If this "automatic emancipation" is permitted, parents are permitted to "divorce their children" and avoid paying child support simply by sending their children to live with a third party or, worse yet, just throwing the child out of the house.

In 1984, the legislature enacted what is now subsection (b), which provides that a child who joins the United States armed services, gets married, or is not under the care and control of either parent is emancipated. I.C. § 31–16–6–6. This language evolves from prior case law.[2] *Green v. Green*, 447 N.E.2d 605 (Ind.Ct.App.1983), *trans. denied,* involving the emancipation of a married daughter, was decided a year before the enactment of subsection (b). The court identified several situations in which a minor child may place itself beyond the control and support of its parent, including entering the military and "voluntarily leaving the home of a parent and assuming responsibility for its own care." *Id.* at 609. *Green* stated, "The salient feature of these situations is the child creates a new relationship between itself and

its parent, relieving the parent from the responsibilities of support." *Id. Green* concluded that marriage of a minor child creates a similar relationship, and also emancipates the child. *Id.* at 610. We think the legislature intended to adhere to *Green* by enacting subsection (b), and did not intend to permit emancipation without the child's active participation. Thus we think the statutory phrase "not under the care and control" carries with it the implication that the child must be the one who "creates a new relationship" or "voluntarily leaves home." Certainly, the other two circumstances—marriage and service in the armed forces—apply only if the child takes affirmative action.

■ The language of subsection (b)(3), viewed in isolation, leads to the conclusion that neither self-support nor initiative of the child is required for emancipation. Here, however, we think both stare decisis and legislative acquiescence support the view that subsection (b)(3) requires that the child must in fact be supporting itself to be emancipated. The idea that children must be supporting themselves to be emancipated has been a part of Indiana case law since at least 1952. *Corbridge v. Corbridge,* 230 Ind. 201, 208, 102 N.E.2d 764, 767 (1952) (child deemed emancipated because he was in military and could support himself, but "if the child becomes unable to support itself, the father's duty [to support the child] revives"). "When the legislature enacts a statute in derogation of the common law, this Court presumes that the legislature is aware of the common law, and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication." *Bartrom v. Adjust-*

---

**2.** *See e.g., Stitle v. Stitle,* 245 Ind. 168, 182, 197 N.E.2d 174, 182 (1964) ("Emancipation frees a child from the care, custody and con-trol of its parents...."); *Brokaw v. Brokaw,* 398 N.E.2d 1385, 1388 (Ind.Ct.App.1980) (same).

*ment Bureau, Inc.*, 618 N.E.2d 1, 10 (Ind. 1993).

■ As we observed in *Durham ex rel. Estate of Wade v. U–Haul Int'l*, 745 N.E.2d 755, 759 (Ind.2001):

> [T]here is no constitutional bar to revisiting judicial authority interpreting a statute. But if a line of decisions of this Court has given a statute the same construction and the legislature has not sought to change the relevant parts of the legislation, the usual reasons supporting adherence to precedent are reinforced by the strong probability that the courts have correctly interpreted the will of the legislature.

The view that emancipation requires that "the child place herself" beyond the parents' control has been frequently assumed or restated since subsection (b)(3) was enacted. Subsequent case law has also maintained the self-supporting component of emancipation in interpreting the emancipation statute. *See e.g., Young v. Young*, 654 N.E.2d 880, 883 (Ind.Ct.App.1995), *trans. denied* ("Our inquiry under [subsection (b)(3) ] is whether the child is in fact supporting herself without the assistance of her parents."); *Taylor v. Chaffin*, 558 N.E.2d 879, 883 (Ind.Ct.App.1990) ("Our inquiry under [subsection (b)(3) ] is not whether the child is capable of supporting herself but whether the child is in fact supporting herself without the assistance of her parents."). Indeed, in *Quillen*, 671 N.E.2d at 100, this Court adopted and incorporated by reference a Court of Appeals opinion interpreting subsection (b) to that effect.[3] The court there stated, "To determine whether a child has placed herself beyond the control, custody and care of either parent, we consider whether the child is in fact supporting herself without the assistance of her parents." *Quillen*, 659 N.E.2d at 576. Elimination of self-

support and the child's initiative as components of emancipation would be a radical departure from precedent. It would seem to permit parents to liberate themselves from support obligations by unilateral action. In view of the frequently recited judicial assumption that the statute retained these, we do not think the 1984 amendment effected such a drastic change by omission.

■ Because we conclude that emancipation requires the child's initiative and the child's self-support, we find Chad was not emancipated. Although the trial court found that it was Chad's sole decision to live with the aunt, he was not in fact supporting himself. The trial court found that Chad has worked part-time jobs since living with Hembree, but his income has been less than $2,000 per year. The trial court also found that Chad "has been dependent on his extended family since the Fall of 1996 for shelter, clothing, food, and parental supervision." We cannot say Chad was supporting himself.

Although this case does not present the issue, we add that we do not mean to suggest that the child may create an obligation of the parents to provide financial support outside the home by refusing support available within the structure of the residence of the family or a single parent. Put another way, we are not suggesting that a child who leaves the familial residence to escape customary parental supervision is entitled to enlist the aid of a court in obtaining an order for support. If anything, the parents in such a case could insist that the child be ordered home to take advantage of the available support, subject to ordinary supervision.

## II. The Absence of a "De Facto Custodian"

■ The legislature amended the statutes governing child custody proceedings

---

3. At that time, this provision was found at Indiana Code section 31–1–11.5–12 (1993).

in 1999 to provide for "de facto" custodians.[4] Chad argues that Hembree was required to be joined as a de facto custodian by the trial court pursuant to section 31–17–2–8.5.[5] That section provides, "If a court determines that a child is in the custody of a de facto custodian, the court shall make the de facto custodian a party to the proceeding." Ind.Code § 31–17–2–8.5 (Supp.1999). Chad requests that child support be assessed against each parent retroactive to August 11, 1998 and made payable to Hembree, as custodian.

The Court of Appeals held that Chad waived this argument by failing to raise it in the trial court. *Dunson*, 744 N.E.2d at 970. Chad did submit a "Final Argument Memorandum of Law" in support of his proposed Findings of Fact and Conclusions of Law to the trial court. In that memorandum, he mentioned the absence of the de facto custodian, but at no point did he move to join Hembree as an indispensable party or to dismiss the action for lack of an indispensable party. In the first place, it is not clear that the de facto custodian statute applies in this case. The de facto custodian provisions Chad cites are included in the statutes governing paternity and child custody and visitation, not child support proceedings.[6] Regardless of the resolution of that issue, we think that in order to preserve the issue for appeal, Chad was required to move, pursuant to Trial Rule 19, to join Hembree or dismiss for lack of an indispensable party. *See e.g., K.S. v. R.S.,* 669 N.E.2d 399, 404 (Ind.1996) ("[F]ailure to add a necessary party [pursuant to Trial Rule 19] can result in waiver of that right in some cases."); *Coak v. Rebber,* 425 N.E.2d 197, 199–200 (Ind.Ct.App.1981) ("If [the defendant] had felt that the presence of [additional parties] was necessary to a just adjudication, he could have made a motion before or during the hearing to have joined them as parties."); *Ligon Specialized Hauler, Inc. v. Hott,* 179 Ind.App. 134, 140–41, 384 N.E.2d 1071, 1076 (1979) ("Since [the defendant] could have made a motion before or during trial to join [another party] as a party, the question arises whether [the defendant's] failure to do so constitutes a waiver under T.R. 19(C).... We will not allow a party to sit idly by until appellate review before presenting appropriate motions for the joinder of additional parties.").

### III. Appellate Attorney's Fees

■ After the trial court entered its order and concluded that Chad's parents were responsible for his trial attorney's fees,[7] Chad filed several motions in the trial court. These included a motion for the waiver of appellate costs and fees, a

---

4. A de facto custodian is defined, in relevant part, as a person "who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least ... one (1) year if the child is at least three (3) years of age." Ind.Code § 31–9–2–35.5 (Supp.1999).

5. Chad cites section 31–14–13–2.5 throughout his argument that Hembree is a de facto custodian. That section defines de facto custodian in the context of establishing paternity. We cite the identically worded statute, section 31–17–2–8.5, because article 17 deals with custody and visitation rights and seems a more likely candidate in this case.

6. *See In re Guardianship of L.L. & J.L.,* 745 N.E.2d 222, 230 (Ind.Ct.App.2001), *trans. denied* ("We believe the intent of the 'de facto custodian' amendments is to clarify that a third party may have standing in certain custody proceedings, and that it may be in the child's best interests to be placed in that party's custody.").

7. The trial court concluded, "Because fraud formed the basis of his action he is awarded attorney's fees in the amount of Two Thousand Four Hundred Dollars ($2400.00)."

motion to admit Chad as an indigent litigant, a motion for the appointment of pauper's counsel on appeal, a motion to proceed as a pauper on appeal, and a motion for an order requiring the parents to prepay appellate attorney fees of Chad's counsel.[8] All were denied. The Court of Appeals granted Chad's subsequent petition for leave to prosecute as a pauper in aid of appellate jurisdiction. *Dunson,* 744 N.E.2d at 962 n. 1. By granting this petition, the court ordered the preparation of the record and evidentiary transcript for Chad's appeal to be prepared at public expense and waived appellate filing fees. Chad now requests that this Court "reverse the trial court on the issue of a pauper's appeal, make the July 7, 2000 Court of Appeals order a part of the ruling on appeal, and remand to the trial court with appropriate instructions to allow a pauper's appeal, appoint counsel and fix appellate fees against the parents for this appeal."

■ Chad argues that his parents should be responsible for his appellate attorney's fees under three separate statutes, Indiana Code sections 34–10–1–2, 31–15–10–1, and 31–16–11–1.

Section 34–10–1–2 provides:

If the court is satisfied that a person who makes an application [for leave to prosecute or defend as an indigent person] does not have sufficient means to prosecute or defend the action, the court shall:

(1) admit the applicant to prosecute or defend as an indigent person; and

(2) assign an attorney to defend or prosecute the cause.

All officers required to prosecute or defend the action shall do their duty in the case without taking any fee or reward from the indigent person.

Ind.Code § 34–10–1–2 (1998). After Chad was granted his petition to proceed as pauper, this Court found the provision of section 34–10–1–2 requiring attorneys to take a case without compensation to be unconstitutional. *Sholes v. Sholes,* 760 N.E.2d 156, 164 (Ind.2001). We held that if certain findings are made by the trial court, attorneys appointed for indigents pursuant to section 34–10–1–2 must be paid reasonable attorney's fees at public expense if no alternative is available. *Id.* The short answer to Chad's claim for attorney's fees under section 34–10–1–2 is that his attorney was not appointed. Rather, Mr. May appeared as Chad's attorney in his initial petition to the trial court.

■ We also deny Chad's request that his parents pay his appellate attorney's fees pursuant to sections 31–15–10–1 [9] and 31–16–11–1.[10] "The trial court's decision to grant or to deny attorneys' fees will not be disturbed absent an abuse of discretion." *Kovenock v. Mallus,* 660 N.E.2d 638, 643 (Ind.Ct.App.1996), *trans. denied.* Chad argues the trial court abused its discretion in denying appellate attorney's fees because Chad's income was less than $2,000 a

8. Chad's counsel estimated that "30 hours at $150.00 per hour ($4500.00) is required to provide adequate legal services" on appeal.

9. Section 31–15–10–1 provides, "The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees [including] amounts for legal services provided and costs incurred ... after entry of judgment."

10. Section 31–16–11–1 provides, "The court periodically may order a party to pay a reasonable amount for: (1) the cost to the other party of maintaining or defending any proceeding [involving child support orders]; (2) attorney's fees...."

year, "his parents have over $40,000 income per year, work at DaimlerChrysler in Kokomo, Indiana, and have not contributed but a few hundred dollars to him, or his [aunt] since he was 15 years old." The trial court awarded trial attorney's fees based on its finding that fraud formed the basis of Chad's action, not because Chad was unable to pay for his attorney. We cannot say the trial court abused its discretion in making that award but denying appellate attorney's fees.

Because the Court of Appeals granted Chad's petition to prosecute as a pauper, Chad is not responsible for the filing fee of this appeal pursuant to Indiana Appellate Rule 56(B). However, Chad's parents are not responsible for Chad's appellate attorney's fees under any of the cited provisions.

### Conclusion

Pursuant to Indiana Appellate Rule 58(A)(2), we summarily affirm the Court of Appeals finding that Terry Dunson waived review of his cross-appeal by failing to address the elements of fraud. We reverse the trial court's conclusion that Chad was emancipated pursuant to section 31–16–6–6, hold that Chad waived any issue based on failure to join Hembree in this action as a de facto custodian, and deny Chad's request for appellate attorney's fees. We remand to the trial court with instructions to determine whether support payments for Chad are appropriate and, if so, to whom the payments should be made.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER JJ., concur.