## BOLE *v.* CIVIL CITY OF LIGONIER

[No. 19,122. Filed September 29, 1959. Rehearing denied October 21, 1959. Transfer denied February 26, 1960.]

*Albert J. Kuster,* of Ligonier, and *Robert J. Parrish,* of Fort Wayne, for appellant.

*John C. Hagen,* of Ligonier, *Dan C. Flanagan,* of Fort Wayne, and *Merritt W. Diggins,* of Kendallville, for appellees.

MYERS, P. J.—This is an appeal from a judgment of the Noble Circuit Court pursuant to proceedings taken under §48-6105, Burns' Ind. Stat., wherein appellant Elmer Bole appealed to that court as the result of an order of the Board of Public Works and Safety of the City of Ligonier (hereinafter called the Board) which dismissed him from the police force of that city.

Appellant had been appointed to the police force of the City of Ligonier in March, 1951, and had served as chief from January 1, 1952, until January, 1956. Ligonier is a city of the fifth class. Roy J. Jorg was elected mayor in 1955 and took office January 1, 1956. He was also installed as president of the Board, which supervised all matters concerning the police department, including the hiring and firing of police officers. At the time he assumed the office of mayor there were five regular police officers on the force, appellant being one of them. There was a part-time officer also serving who had no regular duties. The part-time officer had had a heart attack and was about 74 years of age. One of the regular officers was about 71 years of age, and another had a wooden leg.

Shortly after the new administration took office, the Board went to Indianapolis and there talked to members of the State Police, the Attorney General's office and the Fraternal Order of Police, concerning the police force at Ligonier, and in particular as to the age of police officers. Upon its return, the Board, on January 19, 1956, passed a resolution that it survey the police department, make inquiry as to age and physical capabilities of the policemen serving therein, and that it

take steps to remove any policemen over the age of 70 years then employed.

The following day, being January 20, 1956, the Board held a meeting in which it demoted appellant from chief to patrolman, and an officer by the name of Wilbur O. Tully was appointed chief in his place. It was pointed out that appellant and another regular policeman were both over 70 years of age, and there was a discussion concerning the possibility of obtaining their resignations. It was decided that the regular policeman would probably resign, but that appellant would not. According to the Board's record of the meeting, the following determination was made:

". . . that the Chief of Police had been contacted and Mr. Bole should have a hearing to determine his physical capacities to serve and whether or not he should be removed from the position of policeman to the City of Ligonier because of advanced age."

The Board held another meeting on January 21, 1956. The record shows that there was a request by Chief Tully to determine the physical capacity of appellant to serve as policeman, which was "shown to the Board." It was then agreed that appellant be notified that on February 1, 1956, there would be a hearing "concerning his physical capacity to serve." A notice was accordingly sent by the Board to appellant informing him of the time and place of the hearing to determine whether he should be removed "for the reason of incapacity to serve due to advanced age."

On January 25, 1956, appellant, by notice properly signed by him and addressed to Roy J. Jorg as Mayor and as a Member of the Board, demanded an opportunity for a hearing.

The hearing took place before the Board on February

1, 1956. The Secretary of the Board presented the case for the Board and asked appellant only five questions: his name, residence, whether he had received the notice, how old he was, and his birth date. Appellant answered all these questions, stating that he was 71 years of age. This was all the evidence presented by the Board. Appellant testified in his own defense that he was in good health, had worked full time without vacation and had often worked overtime; that he had not been sick, that he held a driver's license, had single-handed taken a shotgun away from some troublemakers when a fight started in a cafe, and had knocked a man down who swung on him with a sack full of bottles as he was leading him to jail for an offense. It was also brought out at the hearing that there was not a maximum age limit for a police officer at Ligonier, and that there was no retirement fund established for policemen in that city.

On February 2, 1956, the Board held a meeting wherein the resignations of the regular policemen, one of whom was over 70 and the other who had the wooden leg, were presented and accepted. The Board then passed a resolution, the pertinent part of which reads as follows:

"... that no person be retained on the police force in the city of Ligonier who is over seventy years of age, for the reason that any person over the age of seventy years is deemed physically incapable of the capacity of a regular policeman for the city of Ligonier; ... that the city of Ligonier take immediate steps to bring the police force within the above regulation."

The Board then proceeded to find as a fact that appellant was over the age of 71 years, and that, pursuant to the regulations previously made, he should not be

retained on the force. He was, therefore, notified that his services were terminated as of February 4, 1956.

Appellant took an appeal to the Circuit Court, and the evidence in substance presented at the trial there was much the same as that presented before the Board. There was conflicting testimony concerning the regularity of the Board's proceedings. A letter purportedly signed by Chief Tully was introduced into evidence as being the written request claimed to have been presented to the Board asking for a determination of appellant's physical capacity to serve. Chief Tully denied on the witness stand that he had prepared or signed this letter. He also denied that he had made a request of any kind, either in writing or verbally, to the Board. However, after hearing the evidence, the court made findings of fact wherein it found that the Board had acted properly in all respects, and that it had not acted fraudulently. No reference was made to Chief Tully's request, but the findings state that the hearing was pursuant to a decision made by the Board on January 20, 1956.

The court found that the Board in a duly-constituted session, and upon the evidence produced at the hearing, determined and found that appellant "was incapacitated to serve as a policeman of the City of Ligonier due to advanced age, being over the age of 70 years contrary to regulation previously adopted by said Board of Public Works." The court also made a finding of fact, No. 16, which reads as follows:

"The court further finds that at said hearing of said Board of Public Works held on the first day of February, 1956, it was shown that the plaintiff, Elmer Bole, was over the age of seventy (70) years, and that such showing, of itself, constituted substantial evidence of incapacity due to age."

In its conclusion of law, it found for appellee and that appellant should take nothing by his complaint.

A petition for rehearing was filed by appellant thereafter which was denied. The appeal to this court followed.

In his amended assignment of errors, appellant claims the court was in error in making its conclusions of law and in denying appellant's petition for rehearing.

The petition for rehearing, in brief, states that the findings and decision of the court were contrary to law; that the findings and decision of the court were not sustained by sufficient evidence; that the findings and decision of the Board were contrary to law and not sustained by sufficient evidence; and that certain rulings of the court in the presentation of evidence during the trial were erroneous.

The tenure of policemen and firemen in the State of Indiana is provided for by special statute, being §48-6105, Burns' Ind. Stat., *supra*. The pertinent parts of this statute read as follows:

"Every member of the fire and police forces, including police radio operators and police signal and fire alarm operators, appointed by the mayor, the commissioners of public safety or the board of metropolitan police commissioners, shall hold office until they are removed by said board. They may be removed for any cause other than politics, after written notice is served upon such member in person or by copy left at his last and usual place of residence notifying him or her of the time and place of hearing, and after an opportunity for a hearing is given, if demanded, and the written reasons for such removal shall be entered upon the records of such board. On the conviction in any court of a member of the said fire or police force, including police radio operators and police signal and fire alarm operators, of any criminal offense, or upon a finding and decision of the board that any such member has been or is guilty of neglect of duty, or

of the violation of rules, or neglect or disobedience of orders, or of incapacity, or absence without leave, or immoral conduct, or conduct injurious to the public peace or welfare or conduct unbecoming an officer, or other breach of discipline, such commissioners shall have power to punish the offending party by reprimand, forfeiture, suspension without pay, dismissal, or by reducing him or her to a lower grade and pay. . . .

"Any member of such fire or police force who is dismissed from such force, as aforesaid, . . . shall have the right to appeal to the circuit or superior court of the county in which such city is located from such decision of dismissal . . . by said board. . . .

"Any such decision of the board shall be deemed prima facie correct and the burden of proof shall be on the party appealing. All such appeals shall be tried by the court unless written request for jury be made not less than five (5) days before the date set for said hearing, and shall be heard de novo upon the issues raised by the charges upon which the decision of the board was made, which charges shall be deemed to be denied by the accused person. Within ten (10) days after the service of summons said board shall file in said court a full, true and complete transcript of all papers, entries and other parts of the record relating to such particular case, and inspection thereof by the person affected, or by his or her agent, shall be permitted by the board before such appeal is filed, where so requested. Each party may produce such evidence as it may desire, relevant to the issues, and the court upon such appeal shall review the record and decision of such board."

With this statute in mind, the sole question presented to this court is, whether the decision of the circuit court as to the decision of the Board has a reasonable relation to the fitness or capacity of the appellant so as to justify his dismissal. If the answer is in the negative, this court must reverse the trial court. *State ex rel. Felthoff* v. *Richards* (1932), 203 Ind. 637,

180 N. E. 596: Our courts have repeatedly held that the Legislature intended policemen to hold their positions during good behavior. Their tenure is fixed within the meaning of that statute. *State ex rel. Felthoff* v. *Richards, supra; Roth* v. *State ex rel.* (1902), 158 Ind. 242, 63 N. E. 460; *Shira* v. *State ex rel.* (1918), 187 Ind. 441, 119 N. E. 833.

As was stated in the *Richards* case, *supra* (at pp. 641, 642, 643, 644 of 203 Ind., at p. 598 of 180 N. E.):

"The General Assembly has recognized the sound public policy of retaining in the public service policemen and firemen who have become increasingly valuable by reason of their experience and has, by statute, assured these public servants an indefinite tenure of position during good behavior and satisfactory performance of their duties. In order to protect this tenure of position the General Assembly has provided for a hearing on proper notice for a policeman or fireman under charges. . . .

"There is no mystery in this problem. Any one of common understanding knows that the General Assembly intended to stop the indiscriminate dismissal of firemen and policemen each time there should be a change in political control of a city administration. To give effect to this purpose the statute requires that a dismissal must be for cause; and to further protect the person under charges he is entitled to have a hearing and to have 'the written reason for such removal' entered upon the records of the board. The statute forbids 'politics' being considered a 'cause'; and under the decisions of this court no 'cause' is a legal cause unless it bears a reasonable relation to the policeman's or fireman's 'fitness for holding the office, or his incapacity to discharge the duties thereof.'"

The law requires more than formality in the hearing before the Board. It requires a valid cause to be assigned for dismissal and a fair hearing in which evidence tending to support the decision of the Board is heard and considered. *State ex rel.*

*Felthoff* v. *Richards, supra; Coleman* v. *City of Gary* (1942), 220 Ind. 446, 44 N. E. 2d 101.

The cause must be for some dereliction, general neglect of duty, or some delinquency affecting the general character of the officer or his fitness for holding office, or his incapacity to discharge his duties. *Coleman* v. *City of Gary, supra.*

If a policeman has been illegally dismissed, he is entitled to have his dismissal set aside under this statute. *State ex rel. Felthoff* v. *Richards, supra.* Our Supreme Court has held that this statute is both remedial and penal in nature. This being the case, the Board must bring its written charges clearly within the terms of the statute. It can only try the policeman upon the written reasons entered upon the record of the Board. *City of Ft. Wayne* v. *Bishop* (1950), 228 Ind. 304, 92 N. E. 2d 544.

In this case the Board's records of January 21, 1956, show that there was a request by the new chief, "shown to the Board," that there be a hearing to determine appellant's "physical capacity to serve as a Policeman." A notice delivered to appellant stated that the hearing would be held to determine whether he should be removed "for the reason of incapacity to serve due to advanced age." The hearing brought out the fact that appellant was 71 years of age. No physical defects were proven. The evidence conclusively showed that he was in good health and had performed his job satisfactorily. At the trial a member of the Board testified as follows:

"... *the only thing,* let me speak as one of the members of the Board of Public Works, *the only thing* we were, we judged Mr. Bole on and accused him of, was *that he was over seventy years old.*" (Our emphasis.)

The Mayor, who was president of the Board, testified:

". . . he [the appellant] was dismissed because he had reached the age of seventy years, *and for no other reason."* (Our emphasis.)

The court in its Finding No. 16 said that the showing that appellant was over 70 years of age *"of itself,* constituted substantial evidence of incapacity due to age." (Our emphasis.)

When appellant was employed there was no regulation of the Board concerning age limitation, nor did he enter into any special agreement that he would retire when he arrived at a particular age. There was no retirement fund or pension plan in existence which could have limited his activities because of age. The only ground upon which the Board could dismiss him had to be within the terms of the statute previously quoted. The only charge filed by the Board thereunder was "incapacity." This brings us to the question: Does age *of itself* constitute incapacity under the statute?

"Incapacity" has been defined by Webster's New International Dictionary, 1931 Edition, as follows:

"Quality or state of being incapable; want of capacity; lack of physical or intellectual power, or of natural or legal qualification; inability; incapability; disability; incompetence."

"Incapacity" has been defined by the Ohio Appellate Court in the following manner: "Incapacity" is the want of a quality legally to do, give, transmit or receive something. It is a lack of physical or intellectual power, or of natural or of legal qualification. It is synonymous with inability, incapability, disqualification. *Godbey* v. *Godbey* (1942), 70 Ohio App. 450, 44 N. E. 2d 810. "Incompetency" has been defined as want of ability suitable to the task with

which an employee is charged, either as regards natural ability or experience, or deficiency of disposition to use one's ability and experience properly. 35 Am. Jur., Master and Servant, §350, pp. 775, 776.

If age of itself can be considered as a ground for incapacity, it would be most difficult to determine when a person is incapacitated. One cannot generalize as to what will happen to physical and intellectual faculties of an individual at any given age. The common law stated that when a youth arrived at the age of 21 years he became an adult, and "was of age." At such time the disability of being a minor was lifted and in one particular moment he was suddenly endowed with the wisdom of all older people and could act for himself as a matter of law, assuming the consequences thereof. The common law, however, never said that when a man attained the age of 70 he just as suddenly lost the status of being a man, and as a matter of law became a disabled shell of his former self so that he was deemed incapable of performing the functions he had been performing 69 years and 364 days prior thereto. The common law never said a person became incapacitated at any particular age.

There are many distinguished and active holders of high office who are over the age of 70. At the present time there is an esteemed United States Senator, active in the affairs of our country, who is over 90 years of age. Many lawyers and jurists die with their boots on in their 80's. Professional men and women are known to be at their best upon reaching the age of 70. On the other hand, there are many in the field of sports who are said to be "washed up" at 35 years of age, or even earlier. As a result, we do not hold that age *of itself* can be considered as a ground for incapacity. In so doing, we believe we are within the

terms of an Opinion of the Attorney General, handed down April 10, 1956, being Official Opinion No. 17, Opinions of the Attorney General of Indiana, 1956, pp. 71, 75, wherein the following question was answered:

> "Can the Common Council of a fifth class city fix the retirement age of a police officer who is not participating in the police pension fund?"

In a well-reasoned opinion, the Attorney General came to the conclusion that such Common Council could not fix an arbitrary age at which policemen, not members of a policemen pension fund, could be retired. The Attorney General stated as follows:

> "Inasmuch as there are no provisions for the retirement or pension benefits for the police officer in question, *his retirement must be deemed the same as a dismissal.* The Acts of 1905, Ch. 129, Sec. 160, *supra* [§48-6105, Burns' Ind. Stat.], provides that dismissal must be justified and may only be effected for cause." (Our emphasis.)

The Opinion did say that if, because of age, a policeman was incapable of fully performing his duties, then he could be removed. There is nothing in the record to show that the ravages of time had made this appellant incapable of performing his duties. If evidence had been presented to the effect that his hearing was impaired, his eyesight dimmed, his muscular strength weakened, his mental reactions slow, or that any of the numerous physical and mental impairments that come with old age had taken place, the result would have been quite different.

We find that the Board's action in dismissing appellant is wholly arbitrary, capricious and contrary to law. The same is true of the trial court's decision in affirming it.

The cause is reversed, with directions that it be remanded for further proceedings not inconsistent with this opinion.

Ax, Cooper and Ryan, JJ., concur.

NOTE.—Reported in 161 N. E. 2d 189.