**Karen J. DENNISON, Appellant–Petitioner,**

**v.**

**Randy J. DENNISON, Appellee–Respondent.**

No. 33A01–9711–CV–375.

Court of Appeals of Indiana.

June 23, 1998.

---

Dawn E. Wellman, Brand & Allen, Greenfield, for Appellant–Petitioner.

David L. Copenhaver, Scotten & Hinshaw, New Castle, for Appellee–Respondent.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Petitioner–Appellant Karen Dennison ("Wife") appeals from the trial court's order suspending the child support obligation of Respondent–Appellee Randy Dennison ("Husband") due to the court's finding of emancipation.

We reverse and remand.[1]

### ISSUE

One issue is presented for our review: Whether the trial court erred in determining that twenty-one year old Stephanie is emancipated.

### FACTS AND PROCEDURAL HISTORY

Husband and Wife's marriage was dissolved in 1983. Wife was awarded custody of the parties' minor children: Stephanie, age 6; and Christy, age 2. Husband was ordered to pay child support until further court order. On February 11, 1997, Stephanie reached age 21. The following day Husband filed a Petition to Modify Support and Determination of Emancipation.

The record reveals that Stephanie was born with meningitis, a condition that causes excess fluid on the brain. Shortly after birth, she underwent a surgery for a shunt to be placed in her brain to relieve the excess fluid. Stephanie graduated from high school in 1995, and attended one year of college in North Dakota. Although Stephanie managed to stay in school for the entire year, her marks were poor and she experienced many problems.

Beginning in October of 1994, Stephanie began having seizures. She was diagnosed with a seizure disorder in 1995, and placed on medication. Initially, the medication was effective in controlling her seizures; however, during the summer of 1996, the seizures worsened, and Stephanie began having "break-through seizures." (R. 78). In March of 1997, Stephanie experienced her first grand mal seizure and was transported by ambulance to Henry County Hospital. Stephanie's medication was changed in March of 1997; however, she continued to experience several petite-mal seizures weekly.

On June 2, 1997, the trial court conducted a hearing wherein the parties presented evidence. Following the hearing, the trial court granted Husband's petition to modify finding as follows:

> The Probate Commissioner finds that Stephanie had her 21st birthday on February 11, 1997. At least as early as 1995, the former wife was aware that Stephanie had been diagnosed with a Seizure Disorder. After that time, Stephanie attended college out of state and was no longer under the supervision of mother. She was able to complete that year of schooling although not with outstanding grades, but she did remain the entire year, living out of state at school. Before Stephanie reached the age of 21, former wife had not filed any petition seeking to extend the support obligation or seeking educational assistance. As a matter of law, at the time Stephanie reached her 21st birthday, she became emancipated.

(R. 39). Thereafter, Wife filed her motion to correct errors which was denied by the trial court. This appeal followed.

### DISCUSSION AND DECISION

Wife contends that the trial court erred in determining that Stephanie was emancipated. Specifically, Wife argues that Stephanie is incapacitated due to her seizure disorder.

---

1. Our opinion speaks only to the child support modification with respect to Stephanie. The trial court's order with respect to the younger child, Christy, was not challenged on appeal.

The statutory provision governing the termination of child support obligations upon a child reaching age 21 is codified at Ind.Code 31–16–6–6(a).[2] This section provides in relevant part as follows:

> (a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:
>
> (2) The child is incapacitated. In this case the child support continues during the incapacity or until further order of the court.

Ind.Code 31–16–6–6(a)(2).

What constitutes emancipation is a question of law, while whether there has been an emancipation is a question of fact. *Young v. Young*, 654 N.E.2d 880, 883 (Ind.Ct. App.1995), *reh'g denied, trans. denied.* Emancipation of a child is never presumed, but must be established by competent evidence. *Caddo v. Caddo*, 468 N.E.2d 593, 594 (Ind.Ct.App.1984). The petitioner seeking emancipation bears the burden of proving that the child is emancipated. *Brancheau v. Weddle*, 555 N.E.2d 1315, 1318 (Ind.Ct.App. 1990). Child support modifications will not be set aside unless they are clearly erroneous. *Stultz v. Stultz*, 659 N.E.2d 125, 128 (Ind.1995). A judgment is not clearly erroneous unless there is a total lack of supporting evidence or the evidence is undisputed and leads to a contrary conclusion. *Brancheau*, 555 N.E.2d at 1317. On appeal, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.*

In support of her argument, Mother relies in part on *Free v. Free*, 581 N.E.2d 996 (Ind.Ct.App.1991), wherein we held that the parties' adult son was incapacitated such that Husband's support obligation had to continue. In *Free*, Husband filed a petition seeking emancipation of his 21–year–old physically disabled son and abatement of child support. This petition was denied by the trial court, and Husband appealed. The record revealed that the parties' son, Terry, was physically challenged in that he had artificial feet up to his ankles, had no right hand and was missing all fingers on his left hand. Terry lived with Mother and was employed part-time as a janitor for the school system. Terry's work supervisor and a vocational rehabilitation counselor testified that if Terry lost his job with the school system, it would be very difficult for him to obtain other employment. Terry earned $121.00 per week and his yearly expenses, exclusive of room and board, exceeded $5,000.00. Additionally, every few years Terry incurred medical expenses for the purchase of new prostheses. On appeal, we found that the evidence presented before the trial court demonstrated that Terry was incapacitated within the meaning of Ind.Code 31–1–11.5–12(d)(2).[3] *Id.* at 998. Specifically, we held that the trial court did not abuse its discretion in denying Husband's petition for emancipation and ordering him to continue paying child support. *Id.*

In a more recent Indiana Supreme Court decision, it was held that a parent's child support obligation with respect to an incapacitated child continues beyond emancipation even though the child earns an income. *Lea v. Lea*, 691 N.E.2d 1214 (Ind.1998). In *Lea*, the child at issue, Tara, was over the age of 21; however, she suffered from mental retardation and anxiety attacks. Her I.Q. was in the low sixties, and Tara's mother was required to manage her money, tend to many of her personal care needs, and provide her with transportation. *Id.* at 1215. Based on this evidence, the trial court found that Tara was incapacitated. In determining the support to which Tara was entitled, the trial court used the Indiana Child Support Guidelines and considered Tara's income and the income of Mother and Father. The court then determined Father's contribution based on his earnings relative to those of Mother and Tara. On appeal, Father did not contest the fact of Tara's incapacitation; however, he argued that his support obligation should be

---

2. The re-codified section 31–16–6–6 became effective July 1, 1997. From July 1, 1966, to June 30, 1997, the statute was codified at Ind.Code 31–1–11.5–12(e). There is no substantive difference between these versions of the statute.

3. Prior to July 1, 1996, Ind.Code 31–16–6–6(a) was codified at Ind.Code 31–1–11.5–12(d). There are no substantive differences between the section applied in *Free*, 581 N.E.2d 996, and the section we are relying upon in the case before us.

suspended because Tara was employed and earned an income. Upon review of the case, this court reversed holding that the Father's support obligation should be reduced by the amount of Tara's earned income. *Lea v. Lea,* 681 N.E.2d 1154 (Ind.Ct.App.1997). Specifically, we mandated that when a trial court is determining child support under these circumstances, the court must follow a methodology which reduces the total child support obligation by the amount the child contributes to his or her own support. *Id.* at 1157. On transfer, the supreme court affirmed the trial court and held that "by operation of Ind.Code § 31–16–6–6(a)(2), Father and Mother ha[d] a continuing duty to support Tara." *Lea,* 691 N.E.2d at 1216. The court also held that the appellate mandate regarding the computation impermissibly impinged upon the trial court's discretion. 691 N.E.2d at 1218. Hence, the trial court's decision was affirmed in all respects.

 Like the emancipated children in *Free* and *Lea,* Stephanie has been able to work and potentially earn an income, yet she is still dependent upon her parents for support. Stephanie obtained various jobs upon her return from college; however, none of them lasted for more than a few weeks. For example, she worked as a cashier at a grocery store, but was terminated. Similarly, she was terminated from a convenience store. During the summer of 1996, Stephanie received vocational rehabilitation services through Raintree Programs. The attempt at vocational rehabilitation was relatively unsuccessful. Stephanie's counselor felt that Stephanie was a difficult candidate to place in suitable employment due to her seizure disorder and the limitations associated with it. Additionally, Stephanie was unable to drive and therefore required employment nearby her home. During the winter of 1996, Raintree placed Stephanie as a cashier and customer service provider at Wal–Mart. Neither of these positions turned out to be suitable for Stephanie, and her general job performance, interaction with customers and fellow co-workers and physical and emotional stamina were poor. After approximately 5 days at Wal–Mart, Stephanie's vocational counselor determined that the position was not a viable option for Stephanie.

Our review of the record reveals that Stephanie has led an emotionally-troubled as well as a physically-challenged childhood and adolescence. Stephanie has been involved in various treatment and counseling settings, including in-patient treatment, since the seventh grade. Stephanie's physical limitations have made it virtually impossible for her to secure employment. In a letter which was admitted at the hearing, Stephanie's neurologist stated as follows:

> Because of her seizure frequency, Stephanie has been unable to hold a job. It is possible that Stephanie will not be able to hold a job in the future and will need to be on some type of financial support. If we are unable to gain better control of her seizure disorder, she may not be able to progress to independent living. She may need supervision to avoid injury or accident secondary to her seizure disorder.

(R. 79).

The undisputed evidence reveals that Stephanie is physically disabled and her capacity for maintaining gainful employment is severely limited. Contrary to the trial court's judgment, no emancipation occurs where a child is so physically or mentally disabled that she cannot provide for herself. *Baker v. Baker,* 488 N.E.2d 361, 366 (Ind.Ct.App. 1986). Because we find that the undisputed evidence leads to a result contrary to that reached by the trial court, we reverse.

We reverse and remand for further proceedings consistent with this opinion.

NAJAM and BAILEY, JJ., concur.