Mark LIDDY, Appellant–Petitioner,

v.

Kathleen LIDDY, Appellee–Respondent.

No. 49A05–0708–CV–444.

Court of Appeals of Indiana.

Feb. 20, 2008.

Transfer Denied May 15, 2008.

the jury trial and the damages and attorney fee awards.

Judy M. Tyrrell, Tabbert Hahn Earnest & Weddle, LLP, Indianapolis, IN, Attorney for Appellant.

Holly L. Lyons, Greenfield, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

During marital dissolution proceedings between Mark and Kathleen Liddy, Mark asked the trial court to declare his twenty-one-year-old son, A.L., emancipated. Kathleen countered that A.L.'s schizoaffective disorder rendered him incapacitated and, therefore, in continuing need of child support. The trial court denied Mark's request for emancipation and ordered him to pay $500 per month in child support. Mark now appeals, arguing that the trial court improperly placed the burden upon him to show that A.L. is not incapacitated and that the court erred by prospectively awarding custody of A.L. to Kathleen and by failing to follow the Indiana Child Support Guidelines. We agree that Kathleen bore the burden of proving A.L.'s incapacitation. However, we find that there is no indication that the trial court improperly allocated this burden and that the court did not err in deeming A.L. incapacitated. Further, we find that, rather than issuing a prospective custody order, the trial court granted custody of A.L. to Kathleen. Finally, we find that the trial court adhered to the Indiana Child Support Guidelines. We affirm.

### Facts and Procedural History

Mark and Kathleen married on November 29, 1980. They had two children during their marriage, one of whom is A.L., born February 7, 1986.[1] In April 2002, at the age of sixteen, A.L. experienced a psychotic episode while at school and was hospitalized for psychiatric treatment. At that time, he suffered delusional thinking and was diagnosed with schizophrenia. Since then, A.L. has taken several antipsychotic medications. He has also been hospitalized two other times for psychiatric treatment, with the last hospitalization occurring in October 2004. A.L.'s present diagnosis is schizoaffective disorder.

After A.L. graduated from high school in May 2004, he attended college as a part-time student, living with his parents. In August 2005, Mark and Kathleen separated. Initially, Kathleen and A.L. remained in the marital home and Mark lived elsewhere, but after two months Kathleen and A.L. moved together to another home. A.L. had difficulty handling the demands of college coursework, and, after four semesters during which he earned a total of approximately twelve credit hours, A.L. dropped out of school. He continued living with Kathleen and at some point obtained employment. Kathleen helped A.L., who has an unusual sleep pattern, wake in time for work and remember to take his medications. In January 2007, one month before A.L.'s twenty-first birthday, Kathleen and A.L. agreed that he should move into his own apartment. He did so, and Kathleen continues providing him with financial assistance. Specifically, she provides him an automobile and a credit card to pay for gasoline and some food, and she pays for his health insurance, car insurance, clothing, shoes, and car maintenance. Tr. p. 58–59. In addition, Kathleen pays A.L.'s monthly rent, although Mark contributed half of A.L.'s rent in January and February 2007.[2] While the record is silent as to the number and types of jobs that A.L. has held, at the time of the hearing in this matter A.L. was employed as a part-time pizza delivery

---

1. The Liddys' other child is presently twenty-four years old and emancipated.

2. At the evidentiary hearing on this matter, Kathleen testified that A.L. pays his own credit card, cable television, electric, and cellular phone bills. Tr. p. 58; *see also* Respondent's Ex. C.

person, working between twenty and thirty hours per week and earning $4000 per year plus tips.

Mark filed a petition for dissolution of the parties' marriage on May 4, 2006. Prior to the final hearing on May 2, 2007, Mark and Kathleen settled all property issues. The sole issue before the trial court at the final hearing was whether twenty-one-year-old A.L. was emancipated, as argued by Mark. The parties stipulated to A.L.'s diagnosis of schizoaffective disorder. They disagreed, however, as to the impact of the illness upon A.L.'s ability to care for himself. Mark and Kathleen also both prepared child support obligation worksheets prior to the hearing. Mark's child support worksheet calculated his weekly support obligation to be $114.19. Appellant's App. p. 25. Kathleen's worksheet calculated Mark's weekly support obligation to be $166.21. Respondent's Ex. A.[3]

The trial court issued a final decree of dissolution on May 31, 2007. The decree provides the following:

> [A.L.] suffers from Schizoaffective Disorder which prevents him from being able to be emancipated at age 21. A.L. is an incapacitated adult who will need on-going support from both parents pursuant to IC 31–16–6–6(2). . . . The burden of providing support should not fall exclusively on one parent or the other. . . . [T]he parties shall divide the following expenses for [A.L.] as follows: Husband shall pay the sum of $500 per month, $250 of which shall be applied to rent and shall be paid either directly to the landlord or to Wife. The balance of each monthly payment shall be applied by Wife to [A.L.]'s expenses as they are incurred or put aside to assist as needed should [A.L.] have a financial setback due to his illness. Wife shall continue to maintain health insurance so long as [A.L.] is eligible through the present coverage through her employer. Out of pocket medical, dental, optical and prescription expenses shall be divided 50/50. All of the above shall be in lieu of actual child support payments to either party but however shall be considered as in the nature of support and shall be enforceable in the same manner and by the same means as an ordinary child support order . . . . Wife shall be considered to be the custodial parent should the need for a determination arise.

Appellant's App. p. 9–10. Mark filed a motion to correct errors, alleging that the trial court erred in determining A.L. to be incapacitated, in finding Kathleen to be the custodial parent, and in ordering him, but not Kathleen, to pay child support. *Id.* at 11. The trial court denied the motion. Mark now appeals the final decree of dissolution and the denial of his motion to correct errors.

### Discussion and Decision

Mark raises three issues on appeal. First, he argues that the trial court erred in determining that A.L. is incapacitated and, therefore, not emancipated. Second, he argues that the trial court erred by prospectively awarding custody of A.L. to Kathleen. Finally, he contends that the trial court improperly failed to follow the Indiana Child Support Guidelines. We address each in turn.

### I. Incapacitation

Mark's argument regarding the trial court's finding that A.L. is not emancipat-

3. The trial court took the matter under advisement and ordered the parties to submit verified financial declarations and amended proposed child support obligation worksheets and for Kathleen to submit certain tax information for A.L. The record contains only Mark's amended verified financial declaration.

ed is twofold. First, Mark contends that in emancipation disputes, the burden of proof rests with the party contesting emancipation to show that an adult child is incapacitated. Next, he contends that the trial court in this case erroneously determined that A.L. is incapacitated and therefore not emancipated.

■ A parent's obligation to pay child support typically terminates when the child reaches twenty-one years of age and is then emancipated. *Cubel v. Cubel,* 876 N.E.2d 1117, 1119 (Ind.2007). "What constitutes emancipation is a question of law, while whether an emancipation has occurred is a question of fact." *Dunson v. Dunson,* 769 N.E.2d 1120, 1123 (Ind.2002) (citation omitted). Courts cannot presume emancipation. *Id.* Rather, it "must be established by competent evidence by the party seeking emancipation." *Id.* On appeal, we review rulings regarding emancipation and child support for clear error. *Cubel,* 876 N.E.2d at 1119; *Dennison v. Dennison,* 696 N.E.2d 88, 90 (Ind.Ct.App. 1998). Only where there is a complete lack of supporting evidence or where the evidence is undisputed and leads to a contrary conclusion will we find that the trial court's judgment is clearly erroneous. *Dennison,* 696 N.E.2d at 90. On appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

Certain statutorily-prescribed exceptions prevent the termination of a parent's duty to support a child. Indiana Code § 31–16–6–6(a)(2) provides:

(a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs: . . .

(2) The child is incapacitated. In this case the child support continues during the incapacity or until further order of the court.

Mark argued to the trial court, and again on appeal, that A.L. is not "incapacitated" under Indiana Code § 31–16–6–6(a)(2) and that, therefore, Mark's duty to support him financially ceased when A.L. turned twenty-one.

■ Mark's initial argument in this regard is that the trial court improperly placed the burden upon him to prove that A.L. is not incapacitated. We agree with Mark that the language of Indiana Code § 31–16–6–6(a)(2) places the burden of proving incapacitation upon the party opposing the termination of the obligation of support pursuant to that subsection. However, we acknowledge that one case from another panel of this Court has concluded otherwise. In *Free v. Free,* 581 N.E.2d 996 (Ind.Ct.App.1991), a father sought an adjudication of emancipation regarding his twenty-one-year-old son. The son, employed as a part-time janitor but living with his mother, had artificial feet up to his ankles, was missing all of his fingers on his left hand, and had no right hand. The father contended that once his son reached the age of twenty-one, the party opposing emancipation bore the burden of proving that at least one of the statutory exceptions to emancipation at twenty-one applied. *Id.* at 997. Citing the long-standing rule in this state that "emancipation of a child is never presumed, but must be established by competent evidence," *id.* (citing *Caddo v. Caddo,* 468 N.E.2d 593, 594 (Ind.Ct.App.1984)), the *Free* Court concluded that the burden of proving a lack of incapacitation rested with the father, *id.* (citing *Brancheau v. Weddle,* 555 N.E.2d 1315, 1318 (Ind.Ct. App.1990)). However, the case cited by *Free* to conclude that this rule also requires the party seeking emancipation to negate the existence of incapacity did not deal with a child over the age of twenty-one but, rather, dealt with a child under

twenty-one. *Brancheau*, 555 N.E.2d at 1318; *see* Ind.Code § 31–16–6–6(a)(3). This is distinct from cases in which emancipation will occur but for incapacitation.

We disagree with *Free* because we conclude that the language of Indiana Code § 31–16–6–6(a)(2) contemplates a shifting of the burden of proof of incapacitation to the party opposing the termination of the obligation of support. Under the statute, a parent's duty to pay child support "ceases when the child becomes twenty-one (21) years of age *unless* … [t]he child is incapacitated." I.C. § 31–16–6–6(a)(2) (emphasis added). The statutory condition that "unless" something particular is proven has the effect of requiring the petitioning party to prove a *prima facie* case and then shifting the burden of proof to the opposing party to prove an exception. Thus, the burden rests with the party seeking the termination of support of a child over the age of twenty-one to prove the child's age. Thereafter, the burden shifts to the party opposing the termination of the obligation of support to prove that the adult child is incapacitated.

Our conclusion today does not interfere with established precedent that what constitutes emancipation is a question of law, while whether emancipation has occurred is a question of fact. Parties and courts may not presume emancipation. In other words, an obligated parent must continue paying child support until that time when the support order is removed by the court. *See Ross v. Ross*, 397 N.E.2d 1066, 1069 n. 4 (Ind.Ct.App.1979) ("An obligated parent incurs a substantial risk when deciding on his or her own that emancipation has occurred…. Proper procedure would therefore require the obligated parent to request the trial court find emancipation has occurred and that the statutory duty under the support order is terminated."). Our ruling merely recognizes that Indiana

Code § 31–16–6–6(a)(2) places the burden of proving incapacitation upon the party opposing the termination of the obligation of support. This conclusion also removes from parties seeking emancipation of adult children any requirement that they prove a negative, a particularly difficult burden that we do not believe is envisioned in the language of the statute. *See Milledge v. The Oaks, A Living Center*, 784 N.E.2d 926, 931 (Ind.2003) (refusing to place burden upon party to "prove a negative"); *Jackson v. Warrum*, 535 N.E.2d 1207, 1218 (Ind.Ct.App.1989) (agreeing with *Mitchell v. Volkswagenwerk, AG*, 669 F.2d 1199, 1204–05 (8th Cir.1982), which described as "impossible" the "burden of proving a negative fact").

■ Nevertheless, there is absolutely no indication in the record that the trial court placed the burden upon Mark to prove A.L.'s capacity. Further, Kathleen successfully met her burden of proving A.L.'s incapacity. This Court has defined "incapacity" as the "quality or state of being incapable; want of capacity; lack of physical or intellectual power, or of natural or legal qualification; inability; incapable; disability; incompetence." *Bole v. Civil City of Ligonier*, 130 Ind.App. 362, 161 N.E.2d 189, 194 (1959) (citation omitted), *reh'g denied*. The record reveals that A.L. suffers from schizoaffective disorder, which has affected his ability to pursue higher education or work full-time. Although his condition had not, by the date of the final dissolution hearing, required psychiatric hospitalization for approximately two-and-one-half years, Kathleen presented evidence that stress and added responsibilities aggravate A.L.'s illness. Tr. p. 46–47. By the date of the final dissolution hearing, A.L. had tried to manage his illness with five different antipsychotic medications, but none had con-

trolled his symptoms completely. *Id.* at 52.

Mark relies upon *Caddo,* 468 N.E.2d 593, in support of his argument that A.L.'s independent apartment living and $4000 annual base earnings plus tips prove that he "can provide for himself." Appellant's Br. p. 9. In *Caddo,* another panel of this Court explained, "[I]t is clear that no emancipation occurs where due to illness or injury a child becomes so physically or mentally disabled that he cannot provide for himself but must remain at home with a parent." *Caddo,* 468 N.E.2d at 594. This is true, but it does not mean that whenever a child lives away from home there can be no finding of incapacitation. Here, Kathleen and A.L. decided together that A.L. should live in his own apartment. However, Kathleen, with a contribution from Mark for the first two months, pays the rent, and she facilitates his independent living with a high level of financial support. Specifically, she provides him with an automobile and a credit card to pay for gasoline and some food, and she pays for his health insurance, car insurance, clothing, shoes, and car maintenance. Tr. p. 58–59. Based upon the evidence in the record, we cannot say that the trial court's determination that A.L. is not emancipated due to incapacitation is clearly erroneous.

## II. Award of Custody

Mark next argues that the trial court erred by awarding custody of A.L. to Kathleen because the award was made prospectively. Child custody decisions "fall squarely within the discretion of the trial court and will not be disturbed except for an abuse of discretion." *In re B.H.,* 770 N.E.2d 283, 288 (Ind.2002). On appeal, we will reverse only if we conclude that the trial court's decision is against the logic and effect of the facts and circum-

stances before the Court or the reasonable inferences drawn therefrom. *Id.*

The final dissolution decree issued by the trial court provides, "Wife shall be considered to be the custodial parent should the need for a determination arise." Appellant's App. p. 10. Mark correctly notes in his appellate brief that prospective custody modifications are not permissible under Indiana's custody modification statute, Indiana Code § 31–17–2–21. *See Bojrab v. Bojrab,* 810 N.E.2d 1008, 1012 (Ind.2004) ("[A] trial court may not prospectively order an automatic change of custody in the event of any significant future [action by the custodial parent].").  However, after reviewing the record, we conclude that this provision in the dissolution decree was not a prospective modification of custody. First, we note that it is unclear from what custodial arrangement Mark argues the order creates a prospective modification. Indeed, there is no contention that Mark is the custodial parent, as A.L. resided with Kathleen from the date of the parties' separation until moving into his own apartment in January 2007. Instead of prospectively ordering custody to Kathleen, we believe that with this statement, however inartfully crafted, the trial court ordered *present* legal custody of A.L. to Kathleen. This is evidenced by the child support arrangement ordered by the trial court in the same decree. Specifically, the trial court ordered Mark to pay $250 of his monthly child support for A.L. directly to Kathleen for her to use in support of A.L. Appellant's App. p. 9 ("The balance of each monthly payment shall be applied by Wife to [A.L.]'s expenses as they are incurred or put aside to assist as needed should [A.L.] have a financial setback due to his illness."). Further, the trial court did not order Kathleen to pay any sums of child support directly to A.L. or to Mark.

We additionally note that it is clear from Mark's child support worksheet that he understood Kathleen to be the custodial parent and that the trial court adopted Mark's calculation of appropriate child support from this worksheet.[4] *Id.* at 25. Concluding that the trial court's order granted present, rather than prospective, custody to Kathleen, and faced with no argument as to why this custody order is inappropriate, we cannot say that the trial court abused its discretion in this regard.

### III. Child Support

Finally, Mark argues that the trial court improperly failed to follow the Indiana Child Support Guidelines in ordering him to pay $500 per month in child support. First, he contends that because neither party has custody of A.L., the trial court erred in failing to order Kathleen "to pay any child support, other than one-half of the uninsured medical expenses." Appellant's Br. p. 12. Second, he contends that the child support award is "arbitrary" and should be calculated from the Indiana Child Support Guidelines, with any deviation explained by the trial court. *Id.*

Our standard for reviewing child support awards is well settled. We strongly emphasize "trial court discretion in determining child support obligations," *Brown v. Brown*, 849 N.E.2d 610, 613 (Ind.2006), and we will reverse a support order "only where the trial court's determination is clearly against the logic and effect of the facts and circumstances before the trial court," *Kinsey v. Kinsey*, 640 N.E.2d 42, 43 (Ind.1994).

We find that the trial court's support order *does* oblige Kathleen to financially support A.L. We first observe that the trial court did, in fact, order Kathleen to continue maintaining health insurance for A.L. and to pay one-half of A.L.'s uninsured medical expenses, which are support obligations. Appellant's App. p. 9. Further, we disagree with Mark's contention that "neither parent has custody, so it cannot be presumed that [Kathleen] spends any amount directly on the child. Any amount she spends is strictly voluntary." Appellant's Br. p. 11. We have already determined that Kathleen is A.L.'s custodial parent. As such, she has an inherent support obligation. A parent's custody of a child does not indicate that the parent does not owe a support obligation to that child. *Carmichael v. Siegel*, 754 N.E.2d 619, 632 (Ind.Ct.App.2001). Rather, the parent "simply is presumed to spend the appropriate amount directly on the child[ ]." *Id.; see also* Ind. Child Support Guideline 1 ("[T]he Indiana Child Support Guidelines calculate child support as the share of each parent's income estimated to have been spent on the child if the parents and child were living in an intact household. If one parent has custody, the amount calculated for that parent is presumed to be spent directly on the child."). For this reason, the trial court did not err in ordering Mark, but not Kathleen, to pay cash child support. In addition, we see no meaningful difference between this case and a situation in which a noncustodial parent is ordered to pay child support to a custodial parent while their child lives away from home at school.

We also reject Mark's contention that the trial court abused its discretion by failing to follow the Indiana Child Support Guidelines when calculating his support obligation. Mark characterizes the trial court's $500 per month child support order as an "arbitrary calculation of what [Kathleen] believes [A.L.] needs," Appellant's Br. p. 12, and argues that the

---

4.  We address the trial court's child support order in the next section.

court should have followed the Child Support Guidelines or issued an explanation for deviating from them. It is true that a trial court may only order child support exceeding the Child Support Guidelines "if supported by proper written findings justifying the deviation." *Kinsey*, 640 N.E.2d at 44. Here, however, the trial court had no reason to issue a justification for its child support determination because it did not deviate from the Child Support Guidelines. Mark's child support worksheet, submitted to the trial court as evidence of his calculation of a proper support obligation under the Child Support Guidelines, shows the "recommended child support obligation" as $114.19 per week. Appellant's App. p. 25. This equates to approximately $494.82 per month.[5] This is mere dollars from the $500 monthly child support obligation imposed by the trial court. We cannot say that the trial court erred in issuing its child support order.

### Conclusion

We find that a party opposing emancipation pursuant to Indiana Code § 31–16–6–6(a)(2) bears the burden of proving incapacitation. However, there is no indication that the trial court improperly allocated this burden in this case and the court did not err in deeming A.L. incapacitated. Further, the trial court did not err in its custody determination or calculation of child support.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.

---

**5.** We reach this calculation by multiplying $114.19 by fifty-two weeks and then dividing by twelve months.