# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**KAREN YVONNA RENFRO**
New Albany, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana



FILED

Jun 15 2012, 8:51 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID ASHABRANNER,                    )
                                      )
   Appellant-Respondent,              )
                                      )
       vs.                          )     No.  22A01-1109-DR-411
                                      )
SANDY WILKINS, f/k/a ASHABRANNER,     )
                                      )
   Appellee-Petitioner.               )

APPEAL FROM THE FLOYD SUPERIOR COURT
The Honorable Susan L. Orth, Judge
The Honorable Daniel Burke, Magistrate
Cause No. 22D01-9402-DR-30

**June 15, 2012**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

David Ashabranner ("Father") appeals a trial court order denying emancipation of his child, Cassandra Ashabranner, and continuing his obligation to pay child support. Father raises three issues which we restate as: 1) whether the trial court erred in declaring Cassandra not emancipated, 2) whether the trial court erred in not ordering Sandy Ashabranner Wilkins ("Mother") to pay child support, and 3) whether the trial court erred in calculating the amount of child support without considering Cassandra's income and ability to partially provide for herself. We conclude that, based on the evidence presented, the trial court did not err in declaring Cassandra to be unemancipated. We further conclude that the trial court did err in failing to order Mother to pay child support but did not err in refusing to consider Cassandra's income or ability to partially provide for herself. Accordingly, we affirm in part and remand in part.

## Facts and Procedural History

When Father and Mother divorced in 1994, their minor child, Cassandra Ashabranner, lived with Mother alone, and Father was ordered to pay child support. In March 2011, Father filed a petition to terminate child support, alleging Cassandra was emancipated.[1] The trial court held a hearing on this motion on May 26, 2011. At the hearing Cassandra testified to the following facts. She was nineteen years old, she graduated and received her high school

---

[1] In Father's pro se petition, he checked a box which states the reason for Cassandra's emancipation:

> Cassandra L Ashabranner is at least eighteen (18) years of age; has not attended secondary or post-secondary school for the past four (4) months and is not enrolled in a secondary or post-secondary school; and is or is capable of supporting himself/herself through employment.

Appellant's Appendix at 4.

diploma from Reisz Adult Learning Center a week earlier, on May 20, 2011, and she had submitted an application to enroll at Ivy Tech Community College and begin classes in August 2011.[2] She had not received notice of acceptance from Ivy Tech, but was working with staff there to complete her application for financial aid. Regarding her not yet receiving notice of acceptance to Ivy Tech, Cassandra stated:

> I've already been accepted to one college and they sent me something, but Ivy Tech, they're a little different 'cuz it is a community college. I mean, they'll send out a formal letter maybe, just say hey, let you know you got in, but it's not – it's really not like you're applying to Harvard or anything, you know. It's more, a little different, so.

Transcript at 12.

At the time of the hearing Cassandra was living in an apartment in Clarksville, Indiana, and had lived there for approximately five years, the former part of which with Mother and the latter part of which alone. From late-2010 until at least the date of the hearing on May 26, 2011, Cassandra lived physically and mostly financially independent of her parents and, aside from federal assistance with her monthly rent, she had been paying the entirety of her rent (which includes cable and water), electric, and cellular phone bills. Up until Father filed his motion in March 2011, he had been paying court-ordered weekly support of forty-five dollars to Mother, who then turned over each check to Cassandra. In addition, Cassandra testified that she works as a server at a restaurant and that her hours,

---

[2] Cassandra explained that upon transferring high schools at least twice – it is not clear for what reason – a local school did not accept some of her credits, so she completed her coursework at Reisz and "still got [her] New Albany High School diploma." Tr. at 9.

3

wages, and tips vary greatly, but her income (and Section 8 assistance) has so far been "just enough to pay [her] bills." Id. at 16.

Mother lived with Cassandra in the Clarksville apartment until late-2010. Cassandra explained how it came to be that Mother moved out and Cassandra began living alone in the apartment:

> She [(Mother)] has a, you know, a friend that she goes with. They got a place together – . . . 'cuz they have land and she is sick. And when she dies she wants to leave something to me. So she was like, if I can do this on my own and do this for you, will you take the Section 8 [federal assistance] if you're allowed to, and stay here, that way you have a place and I don't have to worry about you getting into trouble, you know, bouncing home to home 'cuz that's, you know, she knows that I'll have a stable environment. So I can go to school, so I can work, and so I can do those things.

Id. at 18. Cassandra added that, "If I could stay at home till I was twenty-one? Man, I would be home. I'd be home going to school and working. I'd be doing it. But, instead, I'm going to have Section 8 and I'm gonna work and go to school[.]" Id. at 19; id. at 31 (Cassandra stating that if she could have it her way, she would rather live with a parent than alone in the Clarksville apartment). She also added that without Section 8 federal assistance she would not be financially able to live on her own. Id. at 21.

Following the hearing, the trial court issued an order which is a fill-in-the-blank form of the Floyd County Superior Court. The order states:

> Comes now the Original Petitioner, [Mother], in Person and the Prosecuting Attorney, and the original Respondent, [Father], appearing, and with/without counsel, . . . appearing for a hearing on Modification[3]

---

[3] In this paragraph, "in Person" is handwritten and the remainder is typed. In addition, the word "appearing," as it refers to Father, and the word "with" appear to have been circled by hand. The emphasis of "Modification" appears in the original.

\*\*\*

THE COURT FINDS THAT:

X Original Respondent shall (continue to) pay child support in the amount of $42.00 per week . . . .[4]

\*\*\*

X Other: Pet to EmancipatioN DenieD All pymts to be made to child Cassandra Ashabranner eff. 5-27-11. . . .[5]

\*\*\*

Appellant's Appendix at 8-9.

Father filed a motion to correct error, which the trial court denied. Father now appeals. Additional facts will be supplied as appropriate.

## Discussion and Decision

### I. Standard of Review

We review rulings regarding emancipation and child support for clear error. Liddy v. Liddy, 881 N.E.2d 62, 66 (Ind. Ct. App. 2008), trans. denied. We neither reweigh the evidence nor judge the credibility of witnesses, and will only find the judgment clearly erroneous where there is a complete lack of evidence in support of the ruling or where the evidence is undisputed and leads to a contrary conclusion. Id.

### II. Terminating Child Support

Certain statutes govern termination of a parent's duty to support a child, and Indiana Code chapter 31-16-6 generally obligates a parent to pay child support until the child reaches

---

[4] The "X" and the "42.00" appear to be handwritten, and in addition, above this finding the trial court wrote "Now Payable to Cassandra Ashabranner," and circled "continue to." No one raises an issue as to the trial court ordering $42 payments as opposed to $45, which is referred to in the transcript of the hearing.

[5] This finding is handwritten.

twenty-one years of age.  Ind. Code § 31-16-6-1 et seq.; Cubel v. Cubel, 876 N.E.2d 1117, 1119 (Ind. 2007).

Indiana Code section 31-16-6-6 provides:

(a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:
   (1) The child is emancipated before becoming twenty-one (21) years of age.  In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order for educational needs may continue in effect until further order of the court.
   (2) The child is incapacitated. . . .
   (3) The child:
      (A) is at least eighteen (18) years of age;
      (B) has not attended a secondary school or postsecondary educational institution for the prior four (4) months and is not enrolled in a secondary school or postsecondary educational institution; and
      (C) is or is capable of supporting himself or herself through employment.
   In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist.  However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated.
(b) For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:
   (1) is on active duty in the United States armed services;
   (2) has married; or
   (3) is not under the care or control of:
      (A) either parent; or
      (B) an individual or agency approved by the court;
the court shall find the child emancipated and terminate the child support.[6]

---

[6] This section was recently amended to allow termination of child support, except for support for educational needs, once a child becomes nineteen years of age.  This amendment becomes effective July 1, 2012, and does not affect the disposition of this appeal.

It is clear that Cassandra does not fall under (a)(2) because she is not incapacitated or under (a)(3) because she attended a secondary school within four months of the hearing. We then look to (a)(1), under which Cassandra may be emancipated under the terms of (b)(3).[7] In other words, if Cassandra is "not under the care or control of . . . either parent[] or . . . an individual or agency approved by the court," the trial court must find that she is emancipated and terminate Father's court-ordered child support.

Our supreme court's opinion in Dunson v. Dunson, 769 N.E.2d 1120 (Ind. 2002), guides us in determining this case by explaining when sub-paragraph (b)(3)(A) applies. In Dunson, the court stated that emancipation of a minor "requires that (1) the child initiate the action putting itself outside the parents' control and (2) the child in fact be self-supporting." Id. at 1123-24. The court also noted that "[t]he purpose and policy of [31-16-6 is] to provide child support," id. at 1124 (quoting Ind. Code § 31-16-1-2) (alterations in original), and that it believes the legislature's intent in enacting this statute is to "require that parents provide protection and support for the welfare of their children until the children reach the specified age or no longer require such care and support." Id. Finally, the court stated that to allow "automatic emancipation" without the two requirements would allow parents to "'divorce their children' and avoid paying child support simply by sending their children to live with a third party or, worse yet, just throwing the child out of the house." Id.

Of the two issues Dunson highlights, we find the first dispositive: whether Cassandra initiated the action resulting in her being outside her parents' control. It does not appear

_____

[7] Cassandra is not married or on active duty in the United States armed forces.

7

disputed that Cassandra is actually outside her parents' control. The "action" which led Cassandra to be outside Father's control occurred in or around 1994, and although circumstances regarding this action were not included in the evidence, it does not appear either argues that Cassandra initiated that action. The relatively recent action which put Cassandra outside Mother's control is Mother's moving out of the Clarksville apartment. Mother's move was a deliberate action on Mother's part, which resulted in Cassandra being left alone to fend for herself. While Mother and Cassandra are comforted by Mother's stated reason for moving – to provide a future real property inheritance for Cassandra – this move nonetheless left Cassandra alone and formally beyond the control of her parents. This move was not initiated by Cassandra, and therefore she is not emancipated.

### III. Mother's Child Support Obligation

Father next argues that if we affirm the trial court order continuing his child support obligation, which we do, then Mother should also be ordered to pay child support. We agree.

First, the somewhat unique circumstances of this case warrant repeating. Father and Mother divorced in 1994 and around that time Father was ordered to pay child support because he no longer lived with Cassandra, and Mother was not ordered to pay child support because Cassandra lived with her. In late-2010, Mother left Cassandra to fend for herself, and the evidence does not indicate Mother provided Cassandra with any financial or other material support, aside from handing over Father's payments.

Child support in Indiana is based upon the income shares model of child support. Thompson v. Thompson, 868 N.E.2d 862, 866 (Ind. Ct. App. 2007). Our child support

8

obligations worksheet determines how much each parent should pay based on a variety of factors. Generally, the custodial parent does not actually pay their obligation in cash because the custodial parent provides food, clothing, and shelter for the child residing in his or her home. Where the child lives on her own, however, as is the case here, both parents should be required to contribute to the child's support.

The State argues further modification to order Mother to pay child support would be improper because Father did not file a motion for modification of support. We disagree because Father's petition to terminate support due to Cassandra's emancipation is essentially a motion for modification, and the trial court in fact did modify prior support orders by properly ordering that Father make his payments directly to Cassandra rather than to Mother. The trial court abused its discretion in not also modifying child support by ordering Mother to make child support payments.

While a court does not have authority to modify child support without a party's motion raising the issue, a petition to terminate support payments is essentially a motion to modify the amount of weekly support payments downward to zero. Indeed, the following cases refer to modification of child support due to emancipation: Beckler v. Hart, 660 N.E.2d 1387, 1389 (Ind. Ct. App. 1996); Kirchoff v. Kirchoff, 619 N.E.2d 592, 596 (Ind. Ct. App. 1993), disapproved of on other grounds by Merritt v. Merritt, 693 N.E.2d 1320, 1324 n.4 (Ind. Ct. App. 1998), trans. denied. In sum, we remand this case to the trial court for calculating the correct amount of Mother's child support obligation and enter an order requiring Mother to

9

pay accordingly.  To the extent that such calculation warrants modification of the amount of Father's obligation, the trial court is ordered to make the appropriate adjustment.

## IV.  Cassandra's Contribution

Father also argues the trial court abused its discretion in not considering Cassandra's income and ability to provide for herself when determining the amount of child support he should continue paying.  But this argument is not consistent with Indiana's child support statutes, which provide a shared model between parents.  A child who is not yet emancipated is not responsible for providing for him or herself, and his or her income should not be considered by a court determining the amount of child support owed.  See Jendreas v. Jendreas, 664 N.E.2d 367, 372 (Ind. Ct. App. 1996) ("The income shares model . . . apportions the cost of children between the parents according to their means, and is based upon the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family remained intact."), trans. denied.

It is prudent to note here that the only reason the trial court should not consider Cassandra's income at this point is because the issue before it is one of basic child support and not one of post-secondary education expenses.  If the trial court had before it a petition for post-secondary education expenses, Cassandra's income would necessarily be fair game for the trial court's consideration.  See Ind. Child Support Guideline 8(b) ("[T]he court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.").

Conclusion

Cassandra did not initiate the action which led to her living on her own, and therefore she is not emancipated. Father must continue to pay child support, but Mother must also be ordered to pay child support. We applaud Cassandra for her courage and determination to seek an education and provide for herself financially, and we refuse to hold her efforts and resolve to do so against her. The trial court shall not consider her income in determining the amount of financial support she receives from her parents.

Affirmed in part, remanded in part.

BAILEY, J., and MATHIAS, J., concur.